# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

DONALD M. DURKIN
CONTRACTING, INC.,

      **Plaintiff**

      v.

CITY OF NEWARK,

      **Defendant.**

)
)
)
)
)
)
)
)
)
)
)

**C.A. No. N19C-09-206 DCS**

Submitted: October 28, 2019
Decided: June 4, 2020

*Upon Defendant's Motion to Dismiss–*
**GRANTED**.

## OPINION

Paul A. Logan, Esquire, Attorney for Plaintiff.
Max B. Walton, Esquire, Attorney for Defendant.

**STREETT, J.**

## Introduction

Donald M. Durkin Contracting, Inc. (the "Plaintiff") filed a Declaratory Judgment Action alleging breach of contract by the City of Newark (the "Defendant"). Plaintiff requests that the Court issue a judgment that Defendant is and was obligated to cooperate with Plaintiff pursuant to a Settlement Agreement between Plaintiff and Defendant in their 2004 Delaware District Court case (the "Federal Case").[1] Plaintiff also asks this Court to find that Defendant has materially breached the Settlement Agreement in the past and seeks damages.

Defendant was represented by Paul Cottrell, Esquire, Victoria Patrone, Esquire, and the law firm Tighe, Cottrell and Logan, P.A. ("Cottrell") in the Federal Case. Plaintiff instituted a lawsuit against Cottrell in Pennsylvania (the "Pennsylvania litigation") arising from the Federal Case.[2] Plaintiff alleges that Defendant's cooperation is necessary in its litigation against Cottrell.[3]

---

[1] *Donald M. Durkin Contracting, Inc. v. City of Newark, et al.*, United States District Court for the District of Delaware, No. 04-163 GMS.

[2] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Court of Common Pleas of Bucks County, Pennsylvania, No. 0804799-18-2. Although the instant action refers to the Pennsylvania litigation as the Bucks County Action, this Court has renamed it for clarification.

[3] Also, in its Complaint, Response to the Motion to Dismiss, and Response to the Motion for Sanctions, Plaintiff misinformed the Court that Defendant had asserted claims against Cottrell for the same reasons that Plaintiff had asserted claims against Cottrell. Plaintiff wrote:

> "Those same actions [Cottrell's conduct while representing Defendant in the Federal Case], described herein, prompted [Defendant] to pursue its own claim

1

against [Cottrell] *after* entering into the Settlement Agreement with [Plaintiff]." Plaintiff's Complaint, at 4 (emphasis in original).

"In May 2009, [Cottrell] disclosed to [Plaintiff] that [Defendant] and its insurer in the Federal Action had asserted "separate claims" against [Cottrell] over their representation of [Defendant] in the Federal Action, that those claims were subject to a tolling agreement, and that any resolution of the Bucks County Action would be contingent on the [Defendant's insurer's] acceptance of [Cottrell's] offer to settle those claims." *Id*. at 9-10.

"[Plaintiff] does not specifically know whether [Defendant] settled its claims against [Cottrell] or whether [Defendant's] claims, which fell under [Cottrell's] malpractice insurance, remain pending, but believe that [Defendant] has likely settled with [Cottrell]." *Id.* at 10.

"In October 2013, because [Plaintiff] knew that [Defendant] asserted claims against [Cottrell] for its representation of [Defendant] in the Federal Court Action, [Plaintiff] requested [Defendant's] cooperation and requested an affidavit waiving any purported attorney/client privilege [Cottrell] might assert." *Id*.

"…[Defendant's] assertion of claims against [Cottrell] vis-à-vis their handling of the Federal Action placed squarely at issue facts and communications connected with the representations." *Id.* at 12.

"…because [Defendant] made claims against [Cottrell] *for the same reasons as* [Plaintiff] *has in the Bucks County Action*, [Defendant] cannot rely on privilege as a basis to dismiss this action." Response to Motion to Dismiss, at 5 (emphasis in original).

"[Defendant], itself, made claims against [Cottrell] *for the same reasons as* [Plaintiff] *has in the Bucks County Action*. [Defendant] cannot rely on 'privileged communications' in its pursuit of [Cottrell] and then claim a 'restored' privilege as its basis to dismiss this action." Response to Motion for Sanctions, at 3 (emphasis in original).

After reviewing these allegations, this Court insisted on citations or documentation concerning Plaintiff's allegation that Defendant had filed a claim against Cottrell. Defendant responded that it did not file a claim against Cottrell and that its insurer (Travelers/St. Paul) merely engaged in "discussions and eventually reached a settlement with the insurer for [Cottrell]." Defendant's May 26, 2020 Supplemental Brief, at para. 1.

Plaintiff, only after the Court's inquiry and Defendant's denial, acknowledged that Defendant did not initiate litigation against Cottrell and conceded that its representations to the Court were inaccurate. Plaintiff's May 28, 2020 Supplemental Brief, at para. 1. (emphasis in original).

Defendant moves for dismissal, contending that the Settlement Agreement released Defendant from further litigation, the Settlement Agreement does not require Defendant's cooperation in the Pennsylvania litigation, and Plaintiff's instant action is barred by the statute of limitations. For the following reasons, the Court finds that Plaintiff's action is barred by the statute of limitations.[4]

## Statement of Facts

On March 16, 2004, Plaintiff sued Defendant in the United States District Court for the District of Delaware for wrongful termination of a contract to erect a reservoir and violation of Plaintiff's civil rights.[5] Defendant was represented by Cottrell.[6]

---

[4] The Court finds that Defendant's statute of limitations defense is dispositive. Therefore, the Court will not address Defendant's other defenses.

[5] In the Federal Case, Plaintiff alleged that Defendant violated its civil rights by depriving it of property without due process. Defendant then filed a counterclaim against Plaintiff alleging that Plaintiff breached the contract. *See* Plaintiff's Complaint, at 1-3. Defendant also filed a third-party complaint against Plaintiff's surety Federal Insurance Company. The suit against Federal Insurance Company was dismissed on summary judgment on September 22, 2006. *See Durkin Contracting, Inc. v. City of Newark, et al.*, Del. D. No. 04-163 (Sept. 22, 2006) (ORDER), attached to Plaintiff's Complaint, at Ex. B.

[6] In the Federal Case, there was an issue involving whether Defendant's disclosure of a certain letter sent from Defendant's representative to Cottrell (that was apparently attached as an exhibit to Defendant's brief in the Federal Case) constituted a waiver of attorney/client privilege on certain communications. In a September 12, 2006 Order, the District Court ruled that the letter did indeed constitute a subject matter waiver on certain attorney/client privileged communications. It appears that the court limited the scope of the waiver to certain issues that related to Defendant's defense in the Federal Case. Specifically, the court held that the following topics (without elaboration), at issue in the Federal Case, fell under the scope of the waiver: communications concerning Defendant's allegation of Plaintiff's "failure to proceed," Defendant's allegation that Plaintiff "failed to follow the direction of the engineer," Defendant's allegation that Plaintiff "would not complete the project at the price it bid," Defendant's statement that Defendant "worked to address

3

On October 12, 2006, following a jury trial, Plaintiff was awarded $36,700,000.00.

On April 9, 2008, after considering Defendant's post-trial motions, the District Court reduced the award to $25,630,819.40. Both parties then filed appeals with the United States Court of Appeals for the Third Circuit.[7] Both parties also pursued mediation.

On May 14, 2008, Plaintiff filed a lawsuit against Cottrell in the Pennsylvania Court of Common Pleas in Bucks County while Cottrell was still representing Defendant in the Third Circuit appeal.[8] Plaintiff's litigation against Cottrell alleged claims of abuse of process, malicious prosecution, and intentional interference with contractual relations.

---

concerns," and Defendant's statement that Defendant "paid on time." *Durkin Contracting, Inc. v. City of Newark, et al.*, Del. D. No. 04-163 (Sept. 12, 2006) (ORDER), attached to Plaintiff's Response to the Motion for Sanctions, at Ex. H.

Also in the Federal Case, there was an issue involving whether Defendant should be sanctioned for violating certain discovery obligations. In a September 28, 2006 Order, the District Court concluded that Defendant violated its discovery obligations by failing to timely produce responsive documents. The court found that Plaintiff was prejudiced by the delay. The court determined that sanctions were warranted and sanctioned Defendant by dismissing its counterclaim. *Durkin Contracting, Inc. v. City of Newark, et al.*, Del. D. No. 04-163 (Sept. 28, 2006) (ORDER), attached to Plaintiff's May 28, 2020 Supplemental Brief, at Ex. D.

[7] *Durkin Contracting, Inc. v. City of Newark, et al.*, Third Circuit, Nos. 06-4762, 06-4761, and 06-4850.

[8] *See* footnote 2.

On June 23, 2008, prior to submitting briefs to the Third Circuit, Plaintiff and Defendant reached a Settlement Agreement and Mutual Release (the "Settlement Agreement") and ended the Federal Case.

On July 18, 2012, Plaintiff sought discovery from Cottrell in its Pennsylvania lawsuit against Cottrell.[9]  Defendant Cottrell invoked attorney/client privilege stating that the privilege stemmed from their representation of Defendant in the Federal Case.[10]

In October 2013, more than a year later, Plaintiff then requested Defendant's cooperation against Cottrell in the Pennsylvania case.  In fact, Plaintiff drafted and presented an affidavit to Defendant that would have waived any purported attorney/client privilege for any and all communications between Defendant and Cottrell. Defendant refused to sign the affidavit or cooperate.

---

[9] On July 18, 2012, Plaintiff served Cottrell with Interrogatories and Requests for Production of Documents.  On August 24, 2012, Cottrell served Plaintiff with its Answers and Objections to the Interrogatories and Requests for Production of Documents.  *See Donald M. Durkin Contracting, Inc., v. Cottrell, Petrone, and Tighe, Cottrell & Logan, P.A.*, No. 2513 EDA 2014, at 3 (Sept. 28, 2015) (MEMORANDUM), attached to Plaintiff's May 28, 2020 Supplemental Brief, at Ex. E.

[10] On April 9, 2013, Plaintiff filed a Motion against Cottrell to Determine their Objections and to Compel their Responses to Discovery Requests.  Plaintiff also moved for sanctions against Cottrell.  On May 7, 2013, Cottrell responded in opposition and included a New Matter.  On April 9, 2014, Plaintiff replied to Plaintiff's New Matter.  On July 30, 2014, the Pennsylvania trial court granted Plaintiff's Motion to Compel Discovery but denied its Motion for Sanctions.  On August 29, 2014, Cottrell appealed.  On September 28, 2015, the Pennsylvania Superior Court affirmed the trial court's decision.  However, the Pennsylvania Superior Court stated that, "[m]oving forward, because the attorney-client privilege is a deeply rooted right,… the trial court should grant [Cottrell] the opportunity to meet their burden that the privilege should apply should they seek to do so." *Id.* at 3-4, 15, fn. 10.

On January 9, 2014, Plaintiff obtained an Out of State Subpoena from the Delaware Superior Court for Defendant to produce the Federal Case communications between Defendant and Cottrell for use in the Pennsylvania litigation.[11]

On January 17, 2014, Defendant filed a Motion to Quash the subpoena.

On February 3, 2014, Plaintiff withdrew the subpoena.[12]

On November 23, 2016, more than two years later, Plaintiff obtained another Out of State Subpoena from the Delaware Superior Court for Defendant to produce the Federal Case communications between Defendant and Cottrell for use in the Pennsylvania litigation.[13]

On December 8, 2016, Defendant filed a Motion to Quash this second subpoena.

---

[11] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Delaware Superior Court, No. 14M-01-014 (2014). Plaintiff requested all documents made between Defendant and Cottrell relating to the Federal Case.

[12] Plaintiff writes that it withdrew this subpoena based on a notice that it received form Cottrell's counsel in the Pennsylvania litigation that Cottrell "would seek a protective order to halt the discovery from, *inter alia*, [Defendant]." Plaintiff's May 28, 2020 Supplemental Brief, at para. 2. Plaintiff then writes that it withdrew the subpoena because it concluded that Cottrell's objections "needed to be resolved in [the Pennsylvania litigation] before proceeding with the discovery with [Defendant]." *Id.*

[13] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Delaware Superior Court, No. N16M-11-143 (2016). Plaintiff requested all documents created between Defendant and Cottrell relating to the Federal Case.

On February 3, 2017, Plaintiff withdrew this second subpoena.[14]

On January 15, 2019, almost two years later and for the third time, Plaintiff obtained another Out of State Subpoena from the Delaware Superior Court for Defendant to produce the Federal Case communications between Defendant and Cottrell for use in the Pennsylvania litigation.[15]

On February 5, 2019, Defendant filed a Motion to Quash the third subpoena.

On March 28, 2019, Plaintiff withdrew the third subpoena.[16]

On September 20, 2019, Plaintiff filed its complaint seeking a Declaratory Judgment and a finding that Defendant had breached its Settlement Agreement obligation.

---

[14] Plaintiff states that it withdrew the second subpoena because it failed to provide sufficient time for Defendant to respond to the requests, which is procedurally inconsistent with Delaware court rules. Plaintiff's May 28, 2020 Supplemental Brief, at para. 5.

[15] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Delaware Superior Court, No. 19M-01-106 (2019). Plaintiff requested all documents created between Defendant and Cottrell relating to the Federal Case.

[16] Plaintiff writes that it withdrew the third subpoena "after it became obvious that [Defendant] would continue its objections to produce documents, continue to assert privilege … and continue to refuse to cooperate with [Plaintiff] as required by Settlement Agreement." Plaintiff's May 28, 2020 Supplemental Brief, at para. 6. Plaintiff states that it "concluded that absent a declaratory judgment of the total obligations of [Defendant] in the Settlement Agreement (including its obligation to produce documents and participate in depositions without substantial objections) [Defendant or Cottrell] will persist to interpose objections and further delay the decision in the [Pennsylvania litigation]." *Id.*

## Procedural History

On September 20, 2019, Plaintiff sought declaratory relief against Defendant in this Court. Plaintiff alleges that the Settlement Agreement "obligated [Defendant] to cooperate with [Plaintiff] in the pursuit of its claims against [Cottrell]" in the Pennsylvania litigation.[17] Plaintiff contends that it "is entitled to judgment from this Court declaring [Defendant's] obligations pursuant to the Settlement Agreement and that [Defendant] has materially breached the Settlement Agreement."[18] It also requests the right to pursue "damages, including but not limited to reimbursement from [Defendant] of its costs in enforcing the Settlement Agreement and all direct and consequential damages resulting from [Defendant's] breach."[19]

On October 28, 2019, Defendant filed the instant Motion to Dismiss. Defendant contends that Plaintiff's action should be dismissed because the Settlement Agreement does not require Defendant to waive any attorney/client

---

[17] Without discussing the basis for the declaratory judgment action, the Court notes that Plaintiff cites a combination of two separate provisions in the Settlement Agreement (paragraphs 7 and 18) for this assertion. Plaintiff argues that paragraph 7 of the Settlement Agreement (titled: "Joint Tortfeasor Release Hold Harmless and Indemnification of Newark Parties") provided notice to Defendant that Plaintiff is suing Cottrell. Plaintiff then argues that paragraph 18 obligates Defendant to cooperate in that lawsuit (the Pennsylvania litigation). Paragraph 18 states that "[t]he Parties agree to cooperate with each other and take such additional actions as necessary to effectuate the purposes of this [Settlement] Agreement." Plaintiff's Complaint, at Ex. A. Plaintiff appears to interpret paragraph 18 as an agreement on the part of Defendant to help Plaintiff in Plaintiff's separate lawsuit against Cottrell (in the Pennsylvania litigation).

[18] Plaintiff's Complaint, at 13.

[19] *Id.*

8

privilege or divulge work product; the Settlement Agreement releases Defendant from any claim related to the Pennsylvania litigation; and Plaintiff's action is barred by the statute of limitations.[20]

On March 4, 2020, Plaintiff filed its Response. Plaintiff argues that the Settlement Agreement requires Defendant to cooperate in Plaintiff's Pennsylvania litigation, Defendant previously waived its attorney/client privilege in the Federal Case, and the action is not barred by the statute of limitations.[21]

On April 16, 2020, the Court sent a letter to the parties requesting Supplemental Briefing seeking clarification and identification of the date of the alleged breach.

On April 24, 2020, Plaintiff submitted its Supplemental Brief. Plaintiff denied that there was a specific breach.

---

[20] On February 7, 2020, Defendant also filed a Motion for Sanctions contending that the Settlement Agreement obligates Plaintiff to indemnify Defendant for any litigation (including the instant action) relating to the Pennsylvania litigation. On March 4, 2020, Plaintiff filed its Response to Defendant's Motion for Sanctions. Plaintiff contends that it is not obligated to indemnify Defendant for the instant action because "[t]his litigation follows [Defendant's] refusal to cooperate in breach of the Settlement Agreement for which no indemnification is owed." Plaintiff's Response to Defendant's Motion for Sanctions, at 2. Defendant's Motion for Sanctions is pending.

[21] Plaintiff contends that Defendant cannot assert its attorney/client privilege to avoid its obligation to cooperate under the Settlement Agreement because Defendant's attorney/client privilege was judicially determined to be waived in the Federal Case. *See* Plaintiff's Response to the Motion to Dismiss, at 4. Plaintiff also argues that Defendant cannot rely on its attorney/client privilege because Defendant asserted claims against Cottrell for the same reasons that Plaintiff asserted claims against Cottrell. *Id.* at 5.

On May 8, 2020, Defendant submitted its Supplemental Brief and identified October 2013 as the date of the alleged breach.

### **The Parties' Contentions**[22]

In its Motion to Dismiss, Defendant writes that the Settlement Agreement is a contract, the statute of limitations starts to run at the time of the alleged breach of the contract, and the statute of limitations for breach of contract is three years from the alleged breach. Defendant asserts that the alleged breach of the Settlement Agreement occurred in 2013 when Defendant refused to sign an affidavit or waive the privilege. Defendant argues that more than three years have passed since the time of the breach and the action is now barred.

In Response, Plaintiff contends that its action is not barred by the statute of limitations. Plaintiff argues that it "is seeking declaratory relief in connection with [Defendant's] *ongoing* obligations to cooperate with [Plaintiff]."[23] Plaintiff, without citing authority, further claims that "[Defendant's] prior resistance to provide documents in connection with third-party subpoena does not trigger a breach of contract statute of limitations; instead it invokes the Court's power to interpret the terms of an agreement."[24]

---

[22] Because the statute of limitations issue is dispositive, this Opinion focuses only on the Parties' contentions concerning the statute of limitations.

[23] Plaintiff's Response to Defendant's Motion to Dismiss, at 6 (emphases in the original).

[24] *Id.*

In its Supplemental Brief pursuant to the Court's inquiry, Plaintiff asserts that there is not "any specific breach which disposed of [Plaintiff's] rights."[25] Instead, Plaintiff writes, "there is a well-documented history of [Defendant's] non-cooperation… [and] the positions maintained by [Defendant] continue to adversely affect [Plaintiff's] pursuit of its claims [in the Pennsylvania litigation]."[26] Plaintiff adds that:

> [Defendant's] duty of cooperation set forth in the Settlement Agreement remains effective until the [Pennsylvania litigation] is finally resolved and while past refusals to provide documents are evidence of non-compliance, there is a current, continuing necessity for [Defendant's] cooperation because discovery in the [Pennsylvania litigation] is not completed…[27]

In its Supplemental Brief, Defendant writes that "the statute of limitations (sic) determination is straightforward."[28] It explains that Plaintiff's declaratory judgment case is "founded upon the theory that [Defendant] breached the cooperation clause of the Settlement Agreement by refusing to waive the attorney client privilege."[29] Defendant adds that the alleged breach of contract occurred in October 2013 when Defendant refused to sign an affidavit or waive the attorney/client privilege.

---

[25] Plaintiff's Supplemental Brief, at 2. (internal quotation marks removed).

[26] *Id.*

[27] *Id.*

[28] Defendant's Supplemental Brief, at 2.

[29] *Id.* at 3.

Defendant also points out that Plaintiff's Complaint repeatedly references a breach (i.e. Defendant materially breached the Settlement Agreement by refusing to waive the attorney/client privilege).

Defendant also explains that the continuing breach doctrine (advanced by Plaintiff) to extend the statute of limitations is "rarely invoked and cannot apply if the Plaintiff could have alleged a claim after the initial breach."[30] It further contends that "there is no doubt that [Plaintiff] could have alleged a prima facie case for breach of contract in 2013 when, as [Plaintiff] admits, [Defendant] first refused to waive privilege to assist [Plaintiff] in the [Pennsylvania litigation]."[31]

### Standard of Review

The law is clear that the Court "accepts as true all well-pleaded allegations in the complaint, and must view all inferences drawn from the facts plead in the light most favorable to the plaintiff."[32] However, under Delaware Superior Court Rule 12(b)(6), the Court will dismiss a complaint "if it appears with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[33]

---

[30] *Id.* at 4. (internal quotation marks removed). *citing Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.*, 2019 WL 6726836, at *15 (Del. Super. Dec. 4, 2019).

[31] *Id.*

[32] *Thomas v. Capano Homes Inc.*, 2015 WL 1593618, at *2 (Del. Super. Apr. 2, 2015).

[33] *Id.*

## Discussion

Delaware statutory law gives this Court authority to issue declaratory judgments. The Delaware Declaratory Judgment Act states:

> Except where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree.[34]

After reviewing the Complaint, Response, and Supplemental Briefs, it is apparent that Plaintiff requests this Court to interpret the terms of the Settlement Agreement and declare that Defendant is henceforward obligated to provide Plaintiff with requested documents for use in the Pennsylvania litigation. Plaintiff is also asking that this Court find that Defendant has already breached the Settlement Agreement based on Defendant's past refusal to provide the requested documents.

---

[34] 10 *Del. C.* § 6501.

13

In Delaware, the law is clear that settlement agreements are contracts.[35]  As such, 10 *Del. C.* § 8106 controls the statute of limitations of contracts.[36]  Under § 8106, the statute of limitations for breach of contract is "three years from the date that the cause of action accrued."[37]  Furthermore, this Court has consistently held that "the statute of limitations accrues at the time the contract is broken, not at the time when actual damage results or is ascertained."[38]

[35] *Crescent/Mach I Partners, L.P. v. Dr Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. Dec. 1, 2008) ("Delaware law favors settlements and treats them as binding contracts."), cited favorably in *Samuel L. Guy v. City of Wilmington*, 2020 WL 2511122, at *2, fn. 6 (Del. Super. May 15, 2020); *Trexler v. Billingsley*, 2017 WL 2665059, at *3, f.n. 14 (Del. June 21, 2017) ("Settlement Agreements are contracts.") *quoting Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010).  *See also In Matter of Appraisal of Enstar Corp.*, 1989 WL 11139, at *5 (Del. Ch. Jan. 31, 1989); *Parker-Hannifin Corp. v. Schlegal Electronics Materials, Inc.*, 589 F.Supp.2d 457, 461 (Del. D. Dec. 9, 2008).

[36] 10 *Del. C.* § 8106 (a):

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

[37] *Levey v. Brownstone Asset Management, LP*, 76 A.3d 764, 768 (Del. Aug. 27, 2013).

[38] *Lavender v. Koenig*, 2017 WL 443696, at *3 (Del. Super. Feb. 1, 2017) (internal quotation marks removed).  *See also Greto v. Joseph L. Messa, Jr. & Associates, P.C.*, 2018 WL 3559262, at *2 (Del. Super. July 23, 2018) ("a cause of action for breach of contract accrues at the time of the breach."); *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del. Super. May 26, 1969) ("A cause of action for breach of contract accrues at the time of the breach and a cause of action in tort accrues at the time of the injury."); *Eshelman v. Thomson*, 1979 WL 193327, at *1 (Del. Super. Jan. 29, 1979) ("The cause of action for breach of a contract accrues at the time of the breach"); *Ensminger v. Merritt Marine Coast, Inc.*, 597 A.2d 854, 856 (Del. Super. Dec. 22, 1988)

Although Plaintiff appears to suggest that the three-year statute of limitations applies only to breach of contract actions and not to declaratory judgment actions, the three-year statute of limitations applies to any action that is based on a promise – including a judgment action.[39] This Court has held that where a declaratory judgment action "bears little difference… from… a potential breach-of-contract claim," contract defenses are applicable.[40] So too, the Delaware Chancery Court has concluded that a declaratory judgment claim that is the functional equivalent of a breach of contract claim and is subject to the three-year statute of limitations defense by analogy.[41]

---

("An action for breach of contract accrues at the time of the breach."); *Kaplan v. Jackson*, 1994 WL 45429, (Del. Super. Jan. 20, 1994) ("Delaware courts have… held a cause of action for breach of contract accrues at the time of the breach."); *Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing*, 2002 WL 1335360, at *3 (Del. Super. June 13, 2002) ("The 3 year limitation on cause of actions for an alleged breach of contract accrues at the time of the breach.").

[39] *Eluv Holdings (BVI) Ltd. v. Dotomi, LLC*, 2013 WL 1200273, at *5 (Del. Ch. Mar. 26, 2013) (In a declaratory judgment action, the Chancery Court held that "[u]nder 10 *Del. C.* § 8106, an action based on a promise is subject to a three-year limitations period [and] [p]laintiffs' claims are based on a promise.") (internal quotation marks removed). *See also Coit Capital SEC., LLC v. Turbine Asset Holdings, LLC*, 2019 WL 3949800, at *9 (Del. Super. Aug. 21, 2019) ("[A] request for declaratory relief is a claim seeking non-monetary, affirmative relief. And any cross- or counterclaim for such affirmative relief must satisfy any applicable statute of limitations.").

[40] *Bobcat North America, LLC v. Inland Waste Holdings, LLC*, 2019 WL 1877400, at **5-6 (Del. Super. Apr. 26, 2019) (concluding that contract defenses can be applied to a declaratory judgment action).

[41] *See Eluv Holdings (BVI) Ltd*, 2013 WL 1200273, at **5, 9; *Kraft v. Wisdom Tree Investment Inc.*, 145 A.3d 969, 985, fn. 62 (Del. Ch. Aug. 3, 2016).

Here, Plaintiff's action is based on an alleged promise in a contract, Plaintiff requests interpretation of the terms of that contract, and Plaintiff seeks to pursue damages for a breach of that contract.[42] Plaintiff's claims present little, if any, difference from a breach of contract claim. Indeed, Plaintiff repeatedly alleged (in its Complaint and, again, in its Response to Defendant's Motion for Sanctions) that Defendant materially breached the Settlement Agreement.[43] Plaintiff's Complaint asserts:

---

[42] In addition to requesting a declaration that Defendant is obligated to cooperate in the Pennsylvania litigation, Plaintiff requests a declaration that it "may pursue damages, including but not limited to reimbursement from [Defendant] of its costs in enforcing the Settlement Agreement and all direct and consequential damages resulting from [Defendant's] breach." Plaintiff's Complaint, at 14.

[43] Several instances when Plaintiff alleges the breach of contract include:

> "[Plaintiff] believes that this conduct is a material *breach* of the Settlement Agreement." Plaintiff's Complaint, at 12. (emphasis added).
> "[Defendant's] actions constitute a material *breach* of the Settlement Agreement." *Id*. at 13. (emphasis added).

> "An actual, present, and justiciable controversy exists between [Plaintiff] and [Defendant] concerning [Defendant's] obligations pursuant to the Settlement Agreement and whether the actions of [Defendant] have been a material *breach* of the Settlement Agreement." *Id*. at 13. (emphasis added).

> "[Plaintiff] is entitled to judgment from this Court declaring [Defendant's] obligations pursuant to the Settlement Agreement and that [Defendant] has materially *breached* the Settlement Agreement." *Id*. (emphasis added).

> "[Plaintiff] owes [Defendant] nothing for its *breach* of its duty to cooperate… This litigation follows [Defendant's] refusal to cooperate in *breach* of the Settlement Agreement for which no indemnification is owed." Plaintiff's Response to Defendant's Motion for Sanctions, at 2. (emphasis added).

> "This litigation is based on [Defendant's] *breached* duty of cooperation…" *Id*. at 5. (emphasis added).

16

Based on the lack of cooperation by [Defendant], and despite its knowledge of the relevance of the documents and depositions in [Plaintiff's] action against [Cottrell]; [Defendant] has assisted [Cottrell,] and denied [Plaintiff] access to relevant discovery. [Plaintiff] believes that this conduct is a material breach of the Settlement Agreement.[44]

The gravamen of Plaintiff's complaint is Defendant's "confrontation" to subpoenas obtained by Plaintiff after Defendant refused to cooperate in Plaintiff's October 2013 request for "Defendant's] cooperation and… affidavit waiving any purported attorney/client privilege [Cottrell] might assert."[45] It is clear that Plaintiff understood in 2013 that Defendant "refused to sign the affidavit" and that Defendant's action was unequivocal.[46] As such, the alleged breach of the Settlement Agreement occurred in 2013 and Defendant's subsequent non-cooperation and "resistance" to subpoenas (that Plaintiff ultimately withdrew) does not change the date of the alleged breach. Plaintiff had until 2016 to file a timely action against Defendant concerning the breach. Plaintiff did not file its action within the three-year period.

Furthermore, Plaintiff's recent denial of a "specific breach" does not insulate its case from the statute of limitations' bar. Plaintiff fails to reconcile this denial

---

[44] Plaintiff's Complaint, at 12.

[45] *Id.* at 10.

[46] *Id.*

17

with his previous and repeated assertions (in its Complaint and its Response to Defendant's Motion for Sanctions) that beginning in 2013 Defendant materially breached the Settlement Agreement.[47]  Moreover, Plaintiff provides no legal authority to support its position that Defendant's "well-documented history" of unwavering "non-cooperation," after the (alleged) 2013 breach, tolls the statute of limitations for the 2013 breach.

Additionally, to the extent that Plaintiff is invoking the continuing breach doctrine, also called the "continuous contract doctrine,"[48] its argument fails.  That doctrine is for exceptional circumstances.  In *Ocimum Biosolutions (India) Limited v. AstraZeneca UK Limited*, this Court explained the continuing breach doctrine may be applicable:

> … [in] limited circumstances in which a breach of contract claim cannot be alleged at the time of breach because damages cannot be ascertained at that time. Under this exception, if there is a continuing injury for which the damages cannot be determined until the alleged wrong ceases, the statute of limitations begins to run on the last date of the alleged wrong.[49]

This Court has held that this doctrine has limited use.  "The continuing breach doctrine applies in narrow and unusual factual situations where the alleged wrongful

---

[47] *See* Footnote 43.

[48] *Ocimum Biosolutions (India) Limited v. AstraZeneca UK Limited*, 2019 WL 6726836, at *14, fn. 127 (Del. Super. Dec. 4, 2019).

[49] *Id.* at 14.

18

acts are so inexorably intertwined that there is but one continuing wrong."[50] The doctrine does not apply if "a plaintiff could allege a prima facie case for breach of contract after a single incident… even if a defendant engages in numerous repeated wrongs of similar, if not same, character over an extended period."[51] Plaintiff's complaint of a "continuing necessity" does not constitute a continuing breach.

Here, Plaintiff's Complaint clearly alleges that Defendant, in October 2013, refused to provide documents. Plaintiff was aware in 2013 of that distinct and definite refusal to cooperate. Plaintiff could have asserted its request to the Court up to and until 2016. Plaintiff has not provided a reason for waiting beyond that time and more than three years after the breach to file its action, Plaintiff's 2019 complaint does not change anything concerning its ability to allege a *prima facie* case that Defendant breached the Settlement Agreement in 2013, and Defendant's subsequent refusals (to divulge arguably privileged information) do not create any new causes of action or statutes of limitations.

Therefore, accepting Plaintiff's allegations as true, the Court finds that Defendant's alleged breach of an alleged obligation occurred in 2013. Plaintiff's instant action, filed nearly six years later, is barred by the statute of limitations.

---

[50] *Id.* at 15 (internal quotation marks removed).

[51] *Id. See also, AM General Holdings LLC v. The Renco Group, Inc.*, 2016 WL 4440476, at *12 (Del. Ch. Aug. 22, 2016) ("[T]he doctrine of continuing breach will not serve to extend the accrual date for a breach of contract claim where the alleged wrongful acts are not so inexorably intertwined that there is but one continuing wrong.") (internal quotation marks removed).

## Conclusion

Accordingly, for the foregoing reasons, Defendant's Motion to Dismiss is

**GRANTED**.

  **IT IS SO ORDERED**.


        */s/ Diane Clarke Streett___*
        Diane Clarke Streett, Judge