# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

DONALD M. DURKIN
CONTRACTING, INC.,

      Plaintiff,

      v.

CITY OF NEWARK,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. N19C-09-206 DCS

Submitted: June 9, 2020
Decided: September 29, 2020

*Upon Plaintiff's Motion for Reargument –*
**DENIED**

*Defendant's Motion to Dismiss* **- GRANTED**

# OPINION

Paul A. Logan, Esquire, Attorney for Plaintiff.
Max B. Walton, Esquire, Attorney for Defendant.

**STREETT, J.**

## Introduction

Donald M. Durkin Contracting, Inc. (the "Plaintiff", "Durkin") filed a Motion for Declaratory Judgment asking this Court to declare that the City of Newark (the "Defendant") is obligated to cooperate with Plaintiff in Plaintiff's lawsuit (the "Pennsylvania Litigation") against Defendant's former attorneys ("Cottrell")[1]. Plaintiff alleges that this obligation arose from a Settlement Agreement that ended Federal litigation between Durkin and the City of Newark.[2] Plaintiff also alleges that the Defendant materially breached the Settlement Agreement and seeks damages.

Defendant moved for dismissal asserting that the terms of the Settlement Agreement did not obligate it to cooperate with Plaintiff in the Pennsylvania litigation and that the statute of limitations bars Plaintiff's Declaratory Judgment Action.[3]

Plaintiff responded that the Settlement Agreement expressly obligates Defendant to cooperate in Plaintiff's Pennsylvania litigation, Defendant cannot rely on attorney/client privilege to dismiss Plaintiff's action because Defendant had

---

[1] Paul Cottrell, Esquire, Victoria Patrone, Esquire, and the law firm Tighe, Cottrell and Logan, P.A.

[2] The Court's prior opinion referred to this as the "Federal Case", however it has been changed to "Federal Litigation" or "Federal litigation" in this opinion.

[3] Defendant contended that Plaintiff is attempting to compel Defendant to produce all attorney/client and work product communications between Defendant and Cottrell.

functionally waived the attorney/client privilege, and that the statute of limitations does not bar the claim because Defendant's obligation is a continuing obligation.

This Court found that the alleged breach is barred by the statute of limitations and is not tolled by the continuing obligation doctrine.[4]  Accordingly, the Court granted Defendant's Motion to Dismiss.

Plaintiff has now filed the instant Motion for Reargument[5] asserting that the Court misapprehended the law and facts of the case.  For the following reasons, the Court denies Plaintiff's Motion for Reargument.

**<u>Statement of Facts</u>**[6]

On March 16, 2004, Plaintiff brought an action against Defendant in the United States District Court for the District of Delaware for wrongful termination of a contract to erect a reservoir and for violation of Plaintiff's civil rights by depriving

---

[4] In its Opinion, this Court did not declare that there was a breach.  It held that the claim is barred by the statute of limitations because the alleged breach occurred in 2013 (more than three years before Plaintiff filed the Motion for Declaratory Judgment).  It also found that the continuing obligation doctrine was not applicable because Plaintiff could have made the same claim after the alleged breach occurred in 2013.

[5] Although Plaintiff captioned its motion as a Motion for Reargument, there had not been oral argument prior to the Court's opinion.  Due to the difficulties with the Covid pandemic, the Court allowed a hearing via video on the instant Motion.  Upon review of the parties' briefs and oral arguments, the Motion for Reargument is denied and Defendant's Motion to Dismiss is granted.

[6] For a more comprehensive statement of facts, see this Court's Opinion of June 4, 2020 granting Defendant's Motion to Dismiss.

Plaintiff of property without due process (the "Federal litigation").[7] Defendant was represented by Cottrell.

On October 12, 2006, following a jury trial, Plaintiff was awarded $36,700,000.00.

On April 9, 2008, after post-trial motions, the District Court reduced the award to $25,630,819.40. Both parties then filed appeals with the United States Court of Appeals for the Third Circuit.[8] The parties also pursued mediation.

On May 14, 2008, Plaintiff filed a lawsuit against Cottrell in the Pennsylvania Court of Common Pleas (the "Pennsylvania Litigation").[9] Plaintiff's litigation against Cottrell alleged claims of abuse of process, malicious prosecution, and intentional interference with contractual relations.

On June 23, 2008, prior to submitting briefs to the Third Circuit concerning the Federal Litigation, Plaintiff and Defendant entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement") that ended the Federal Litigation.

---

[7] *Donald M. Durkin Contracting, Inc. v. City of Newark, et al.*, United States District Court for the District of Delaware, No. 04-163 GMS. Defendant filed a counterclaim alleging that Durkin breached the contract and a third-party complaint against Durkin's surety, Federal Insurance Company. The third-party complaint against Federal Insurance Company was dismissed on summary judgment on September 22, 2006. *See Durkin Contracting, Inc. v. City of Newark, et al.*, Del. D. No. 04-163 (Sept. 22, 2006) (ORDER), attached to Plaintiff's Motion, at Ex. B.

[8] *Durkin Contracting, Inc. v. City of Newark, et al.*, Third Circuit, Nos. 06-4762, 06-4761, and 06-4850.

[9] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Court of Common Pleas of Bucks County, Pennsylvania, No. 0804799-18-2.

On July 18, 2012, Plaintiff sought discovery from Cottrell in the Pennsylvania Litigation. Cottrell refused to comply and invoked attorney/client privilege stemming from its representation of Defendant in the Federal Litigation.[10]

In October 2013, more than a year after Cottrell's refusal and invocation of the attorney/client privilege, Plaintiff then requested that Defendant divulge any and all communications between Defendant and Cottrell concerning the Federal Litigation (in order to assist Plaintiff in its Pennsylvania Litigation against Cottrell). Plaintiff drafted and presented an affidavit to Defendant that would have waived any purported attorney/client privilege involving Cottrell. Defendant refused to sign the affidavit or provide those communications.

---

[10] In its briefing in the instant case, Durkin acknowledges that the Pennsylvania Superior Court's Order "allowed [Cottrell] to continue to renew their assertion of privilege." Plaintiff's May 28, 2020 Supplement Brief to Delaware Superior Court, at 6.

In August 2012, Cottrell had refused to answer Plaintiff's Requests for Interrogatories and Requests for Production of Documents, arguing that the information requested by Plaintiff was subject to attorney/client privilege and that Cottrell's former client (the Defendant) did not waive the privilege. In April 2013, Plaintiff filed a Motion to Compel. In July 2014, the Pennsylvania Court of Common Pleas granted Plaintiff's Motion to Compel, which was affirmed by the Pennsylvania Superior Court. The Pennsylvania Superior Court held that Cottrell failed to show that the requested information was privileged material. However, the Pennsylvania Superior Court preserved Cottrell's right to assert the attorney/client privilege in the future. The court stated: "Moving forward, because the attorney/client privilege is a deeply rooted right, ... the trial court should grant Appellants the opportunity to meet their burden that the privilege should apply should they seek to do so." *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Pennsylvania Superior Court, No. 0804799-18-2 (Sept. 28, 2015) (ORDER) at 15, n.10, attached to Plaintiff's April 22, 2020 Supplemental Brief).

On January 9, 2014, Plaintiff obtained an Out of State Subpoena from the Delaware Superior Court for Defendant to produce the communications between Defendant and Cottrell in the Federal Litigation for use in the Pennsylvania Litigation.[11]

On January 17, 2014, Defendant filed a Motion to Quash the subpoena.

On February 3, 2014, Plaintiff withdrew the subpoena.

On November 23, 2016, more than two years later, Plaintiff obtained another Out of State Subpoena from the Delaware Superior Court for Defendant to produce the communications between Defendant and Cottrell in the Federal Litigation for use in the Pennsylvania Litigation.[12]

On December 8, 2016, Defendant filed a Motion to Quash this second subpoena.

On February 3, 2017, Plaintiff withdrew this second subpoena.

On January 15, 2019, almost two years after that, and for the third time, Plaintiff obtained another Out of State Subpoena from the Delaware Superior Court

---

[11] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Delaware Superior Court, No. 14M-01-014 (2014).

[12] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Delaware Superior Court, No. N16M-11-143 (2016).

for Defendant to produce the communications between Defendant and Cottrell in the Federal Litigation for use in the Pennsylvania Litigation.[13]

On February 5, 2019, Defendant filed a Motion to Quash the third subpoena.

On March 28, 2019, Plaintiff withdrew the third subpoena.

## Procedural History

On September 20, 2019, Plaintiff brought a Declaratory Judgment Action against Defendant in this Court. Plaintiff seeks a declaration that the Settlement Agreement obligates Defendant to assist Plaintiff in its case against Cottrell (the Pennsylvania Litigation). Plaintiff also asked this Court to find that Defendant's refusal to provide the communications between Defendant and Cottrell was a material breach of the Settlement Agreement and that Plaintiff may pursue damages resulting from the breach.

On October 28, 2019, Defendant filed a Motion to Dismiss. Defendant contended that the Settlement Agreement does not obligate Defendant to assist Plaintiff in the Pennsylvania Litigation, the Settlement Agreement releases Defendant from any claim related to the Pennsylvania Litigation, and Plaintiff's Declaratory Judgment Action is barred by the statute of limitations.

---

[13] *Donald M. Durkin Contracting, Inc. v. Paul Cottrell, Esquire; Victoria K. Petrone, Esquire; and Tighe, Cottrell & Logan, P.A.*, Delaware Superior Court, No. 19M-01-106 (2019).

6

On March 4, 2020, Plaintiff filed it Response. Plaintiff maintained that the Settlement Agreement requires Defendant to cooperate with Plaintiff in the Pennsylvania Litigation, Defendant previously waived its attorney/client privilege in the Federal Litigation, and the instant action is not barred by the statute of limitations because the Settlement Agreement includes a continuing cooperation obligation.

On April 16, 2020, the Court, in a written request to both parties, sought Supplemental Briefing for clarification and identification of the date of the alleged breach.

On April 24, 2020, Plaintiff submitted its Supplemental Brief and denied that there was a specific breach. Plaintiff also maintained that the statute of limitations was not an issue because the Settlement Agreement created a continuing obligation.

On May 8, 2020, Defendant submitted its Supplemental Brief and identified October 2013 as the date of the alleged breach. Defendant maintained that the Settlement Agreement did not create a continuing obligation.

On June 4, 2020, the Court rejected the applicability of the continuing obligation doctrine and, if there had been a breach, held that the statute of limitations bars Plaintiff's action, and granted Defendant's Motion to Dismiss.

On June 9, 2020, Plaintiff filed the instant Motion for Reargument.

On June 15, 2020, Defendant filed its Response in Opposition.

On July 22, 2020, the Court held a hearing on Plaintiff's Motion for Reargument. At the hearing, the Court requested Supplemental Briefing.

On August 11, 2020, Plaintiff submitted its Supplemental Brief.

On August 14, 2020, Defendant submitted its Supplemental Brief.

### The Parties' Contentions

Plaintiff contends that the Court misapprehended facts and controlling law when it granted Defendant's Motion to Dismiss and that the outcome would have been different. Plaintiff also notes that the Court granted the Motion to Dismiss without holding oral argument.[14]

Plaintiff argues that the Court "misapprehended the law when [it] improperly decided a question regarding the parties' disputed intents with regard to the continuing obligations."[15] Plaintiff asserts that Delaware case law holds that the question of the parties' intent as to whether an obligation is continuing cannot be decided at the motion to dismiss stage. As such, Plaintiff maintains that its case is still viable.

---

[14] Plaintiff also asserts that "it appears this Court has acknowledged [Defendant] has a duty to cooperate." Plaintiff's Motion for Reconsideration, at 3. This is incorrect. The Court did not acknowledge, or imply, anywhere in its Opinion that Defendant owed an obligation to cooperate with Plaintiff in the Pennsylvania litigation.

[15] *Id*. at 5.

Plaintiff cites two Delaware Superior Court cases, *American Tower Corp. v. Unity Communications, Inc.*[16] and *SPX Corp. v. Garda USA, Inc.*[17], to support this contention. Plaintiff writes that *American Tower* stands for the principle that "the question of whether a contract is continuous or severable is to be determined by the intent of the parties, a factual question, which *cannot* be decided by a Motion to Dismiss."[18] Plaintiff adds that the *American Tower* court stated that the parties' intent "may be ascertained through the contract's terms and subject matter, taken together with pertinent facts and circumstances surrounding the formation."[19]

Plaintiff then extrapolates that *American Tower* "requires that [Defendant's] Motion to Dismiss be denied" because Plaintiff "has raised [Defendant's] continuing obligations reflected in the Settlement Agreement."[20] Plaintiff further asserts that "the Settlement Agreement *expressly* states that [Defendant's] duty to cooperate with [Plaintiff] is **_"continuing"_**."[21]

---

[16] *American Tower Corp. v. Unity Communications, Inc.*, 2010 WL 1077850 (Del. Super. Mar. 8, 2010).

[17] *SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398 (Del. Super. Dec. 6, 2012).

[18] Plaintiff's Supplemental Brief, at sec. 1 (emphasis in Plaintiff's Brief).

[19] *Id.* quoting *American Tower Corp. v. Unity Communications, Inc.*, 2010 WL 1077850, at *2 (Del. Super. Mar. 8, 2010).

[20] *Id.*

[21] *Id.* (emphasis in Plaintiff's Brief) (internal quotation marks removed).

Plaintiff also contends that the *SPX* case "reiterated the fact that the Court cannot make the factual determinations of whether a contract is or is not continuous at the Motion to Dismiss phase of the pleadings."[22] Plaintiff writes that the Court in *SPX* found that "[t]o determine whether a contract is continuous or severable, the Court analyzes the intent of the parties."[23] Plaintiff quotes the *SPX* Court as stating that "the question of the parties' intent cannot be resolved on a motion to dismiss, as it is a factual issue that must be resolved by trial."[24]

Plaintiff asserts that the Motion to Dismiss inquiry is thus "limited to whether [Plaintiff's] allegations are sufficient to support…its claim that the Settlement Agreement imposed a continuing obligation on [Defendant]."[25] Plaintiff posits that "[w]hen coupled with factual determinations concerning the parties' intent, taken together with the relevant circumstances surrounding the negotiations and execution of the contract to be confirmed through discovery, [Defendant's] obligations to cooperate will be determined to be ongoing and continuing; the scope of these obligations will be determined at trial."[26]

---

[22] *Id.*

[23] *Id.* quoting *SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398, at *3 (Del. Super. Dec. 6, 2012).

[24] *Id.* quoting *SPX Corp.*, 2012 WL 6841398, at *3.

[25] *Id.*

[26] *Id.*

Plaintiff cites Paragraph 18 of the Settlement Agreement to support its claim of a "continuing contract."[27] Paragraph 18 states: "Continuing Cooperation. The Parties agree to cooperate with each other and take such additional actions as necessary to effectuate the purposes of this Agreement."[28]

Plaintiff asserts that:

> There is no "one-time" period or event that defines [Defendant's] duties because the entire purpose (expressly stated in the Settlement Agreement and in the negotiations of the Settlement Agreement) was so that [Plaintiff] had [Defendant's] cooperation in pursuing the Cottrell [sic] in the [Pennsylvania] litigation (a writ having even been filed before the Settlement Agreement was finalized).[29]

In addition, Plaintiff contends that *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd*,[30] cited by the Court in its decision granting Defendant's Motion to Dismiss, "has little or no application to [Plaintiff's] requested relief"[31] because *Ocimum* concerned the alleged use of trade secrets that constituted a single claim under Delaware law which accrued when the misappropriation was or could have been discovered.[32]

---

[27] *Id.*

[28] *Id.* citing Settlement Agreement, at ¶ 18.

[29] *Id.*

[30] *Ocimum Biosolutions (India) Limited v. AstraZeneca UK Limited*, 2019 WL 6726836 (Del. Super. Dec. 4, 2019).

[31] *Id*. at sec. 2.

[32] *Id.*

11

Plaintiff contends that *Ocimum* is distinguishable from the instant case because "[o]n its face, [Defendant's] cooperation obligations in [the] Settlement Agreement are continuous."[33]    Plaintiff also argues that "there is no short definable period to which [Defendant] can point that triggers or ends [Defendant's] duty to cooperate"[34] because "[its] need for [Defendant's] documents has been, and still is, continuing"[35] and "[its] need for [Defendant's] witnesses to participate in depositions and testify at trial will occur later."[36]

Plaintiff adds that:

> The Settlement Agreement contemplates that [Defendant] will continue to meet its obligations as a whole, and not in a *seriatim* or piecemeal manner.  Indeed, [Defendant] has failed to point to any provision in the Settlement Agreement that would indicate that the parties intended that [Defendant's] obligations *are not* continuous.[37]

Lastly, Plaintiff argues that since the Settlement Agreement obligates Defendant to cooperate in the Pennsylvania litigation, Defendant should not be allowed to circumvent this purported obligation by asserting attorney/client privilege.  Plaintiff posits that Defendant waived its attorney/client privilege when

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* (emphasis in the original).

Defendant pursued insurance claims against Cottrell.[38] To support this argument, Plaintiff cites Delaware Rules of Evidence 502(d)(3) which states that there is no privilege "[a]s to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer."[39]

In opposition, Defendant contends that the Court did not overlook any controlling law or precedent and did not misapprehend the law or facts in granting the Motion to Dismiss. Defendant argues that this Motion for Reargument "is the latest chapter in [Plaintiff's] harassment of [Defendant] in its attempt to force [Defendant] to waive the sacred attorney client privilege…"[40]

Defendant asserts that Plaintiff's Motion for Reargument merely rehashes its previous arguments that were already rejected. Defendant maintains that Plaintiff's motion can be "dismissed on this basis alone."[41]

---

[38] Travelers (Defendant's insurer) had "exercised a private, non-public insurance claim (malpractice) against" Cottrell that Defendant considered to be confidential. Defendant's August 14, 2020 Supplemental Brief at 29, 30. In addition, Plaintiff states that it did not intend to mislead the Court concerning whether Defendant was involved in litigation against Cottrell. Based on this clarification and Plaintiff's explanation presented at oral argument, the Court does not find that Plaintiff had attempted to mislead the Court.

[39] *Id.* The Court does not need to decide the issue of whether an insurance claim against an attorney constitutes a waiver of the attorney/client privilege because Plaintiff's instant action does not survive the threshold issue of the applicability of the statute of limitations.

[40] Defendant's Response in Opposition to Plaintiff's Motion for Reconsideration, at 1.

[41] *Id.* at 2-3.

Defendant also maintains that Plaintiff's construction of the Settlement Agreement is incorrect and "refuted by the plain language of the Agreement." Defendant writes that:

> [T]he Court need look no further than the four corners of the agreement to ascertain the purpose of the Agreement and the parties' intent. There is no reference to [Defendant's] "cooperation" as [Plaintiff] alleges, and no rational interpretation of the contract supports the claim. Instead, [Plaintiff] seeks to create ambiguity where none exists and to coax this Court into ignoring the Agreement so that [Plaintiff] can claim whatever it would like about its *independent* intentions during the negotiation process some 12 years ago, despite the absence of any term even dimly reflecting a *mutual* intention. Notwithstanding [Plaintiff's] machinations here, there is no provision of the Agreement that is "fairly susceptible of different interpretations … [or that] may have two or more different meanings" that warrants the Court to look beyond the four corners of the Agreement (and the parties' pleadings) to determine the purpose and intention of the Settlement Agreement, under [Defendant's] motion to dismiss.[42]

Defendant contends that the Settlement Agreement does not concern or contemplate Defendant's cooperation with the Pennsylvania litigation. In fact, Defendant argues that the plain language of the Settlement Agreement establishes that it had no obligations related to Plaintiff's Pennsylvania litigation. Defendant cites Paragraphs of the Settlement Agreement which released it from "any and all claims" relating to the Pennsylvania litigation and provided that Plaintiff would

---

[42] *Id.* at 6 (emphasis in the original).

14

indemnify Defendant for any claims brought against Defendant related to the Pennsylvania litigation.[43]

Specifically, Paragraph 5 states that Plaintiff agreed "to fully, finally and completely release and discharge [Defendant] … from any and all claims … which the [Plaintiff] and Federal Parties[44] now have or may hereafter have on account of, or arising out of any matter or thing which has happened, developed or occurred prior to the signing of this Agreement…" Paragraph 5 also includes that "[i]t is further specifically understood and agreed by the [Plaintiff] and Federal Parties that the general release contained herein is full, complete and forever final as to any and all claims the [Plaintiff] and Federal Parties may have against [Defendant] herein released…"[45]

Defendant also cites Paragraph 7 of the Settlement Agreement which states that Plaintiff "hereby fully release and discharge [Defendant] from any claims or damages in the Litigation[46] or any separate litigation or proceedings related to the

---

[43] *Id*. at 4.

[44] Paragraph 5 of the Settlement Agreement is titled: "Durkin and Federal's General Release of Newark." The "Federal Part[y]" refers to Federal Insurance Company (Plaintiff's surety). *See supra* footnote 7 for details.

[45] *Id.* at 3, quoting Settlement Agreement, at ¶ 5.

[46] Paragraph 7 states that "the Litigation" refers to "the possible claims against Cottrell." Settlement Agreement, at ¶ 7 (attached to Plaintiff's Complaint as Exhibit A).

Litigation."[47]  Defendant argues that Paragraph 7 makes it clear that if there is any obligation owed, it is an obligation owed to Defendant by Plaintiff.  Defendant asserts that Paragraph 7 "secured clear and comprehensive terms to sever, separate and insulate itself from [Plaintiff] and the Pennsylvania Litigation…"[48]

Defendant further argues that, if the Settlement Agreement had obligated Defendant's cooperation, Plaintiff could have made a *prima facie* claim against Defendant for breach of the Agreement when Defendant refused Plaintiff's 2013 request for assistance in the Pennsylvania Litigation.[49]  Defendant writes:

> That [Plaintiff] subsequently brought three actions to compel [Defendant] by subpoena rather than bringing an action for breach, or some other action to compel compliance with the claimed contractual duty, neither absolves [Plaintiff] of its responsibility to exercise diligence and prudence to protect its claimed contractual rights, nor transforms the Agreement into a continuous contract for which the statute of limitations may be tolled.[50]

Defendant contends that under well-established legal and equitable principles, a party that believes that another party has breached or failed to satisfy an enforceable obligation risks forfeiting the right to seek legal recourse if the party

---

[47] Defendant's Response in Opposition to Plaintiff's Motion for Reconsideration, at 3, quoting Settlement Agreement, at ¶ 7.

[48] *Id*. at 4-5.

[49] *Id*. at 22.

[50] *Id*.

chooses not to pursue an action. Defendant posits that the statute of limitations' purpose is "to establish limited time periods within which a party has the right to assert a viable claim in a court of law"[51] and that nothing occurred in the instant case to toll the statute of limitations.

Moreover, concerning Plaintiff's contention that Defendant waived its attorney/client privilege, Defendant writes that Plaintiff "cites no case or other authority to support its claim that an insurance claim or even active litigation between a client and its attorney inherently abolishes the privilege with respect to parties not involved in those proceedings, or for any other purpose than the proceedings between the client and the attorney."[52] Defendant adds that Plaintiff's allegations that Defendant waived its attorney/client privileges "are irrelevant to a determination of the present matter before this Court, namely, whether [Plaintiff] failed to timely avail itself of any contractual rights and remedies it claims to have had under the parties' Agreement."[53]

As to Plaintiff's continuous obligation claim, Defendant adds:

In addition to being a rehash of arguments already made and resolved, [Plaintiff's] contention that the settlement agreement is "continuous" and not "severable" is nonsensical because, if settlements were deemed "continuing duty" agreements, it would indefinitely extend the statute

---

[51] *Id.* at 25.

[52] *Id*. 28-9.

[53] *Id.* at 29-30.

of limitations on any settlement agreement having a continuing cooperation clause because there are generally no termination provisions in settlement agreements. Settlement agreements, by their very nature, are usually not installment contracts.[54]

Furthermore, Defendant asserts that Plaintiff's contentions are contrary to the holding in *Ocimum Biosolutions (India) Ltd. v. AstraZeneca UK Ltd.* which states that the continuing duty theory does not apply if a plaintiff could have alleged a "prima facie case for breach of contract after a single incident."[55] Defendant argues that "there should be no question that the purported cause of action accrued in 2013 when [Defendant] refused to waive privilege or in 2014 when [Defendant] moved to quash [Plaintiff's] subpoena for attorney client privileged information."[56] As such, Defendant explains, Plaintiff's action is barred by the three-year statute of limitations.

Additionally, Defendant writes that Paragraph 18, the Settlement Agreement clause that Plaintiff cites to support its continuing obligation argument, says nothing about the Pennsylvania Litigation. Defendant argues that Paragraph 18 "relates to no term[s] other than those stated in the [Settlement] Agreement, none of which, including the recitals, state or suggest that [Defendant] agreed to an affirmative

---

[54] *Id*. at 3.

[55] *Id.* at 3.

[56] *Id.* at 3–4.

obligation to 'cooperate' with the Pennsylvania litigation."[57]  As such, Defendant

argues, Plaintiff's claims "have no basis in [the] plain language of the Agreement,

and [Plaintiff] has failed to plead any facts or circumstances – of which there are

none – that could reasonably suggest there was any such *purpose* as alleged."[58]

Moreover, Defendant contends that the holdings of *SPX* and *American Tower*

are not applicable to the instant case.  Defendant asserts that, unlike in *American

Tower* and *SPX*, "the parties' intent [in the instant case] can be resolved by the plain

meaning of the words of their Agreement."[59]

Defendant also distinguishes the facts in *SPX* from the instant case.  Defendant

writes that the *SPX* court determined that the contract concerned ongoing worker's

compensation claims that could continue for years and would not fully mature until

those claims were completed.  Defendant writes that, here, in contrast, the alleged

obligation that Plaintiff asserts "would have fully matured when the Agreement was

secured; or, at the latest, upon [Plaintiff's] first request."[60]  In addition, Defendant

asserts that the court in *American Tower* does not hold as a matter of law that the

---

[57] Defendant's Supplemental Brief at 2.

[58] *Id.* (emphasis in the original).

[59] *Id.* at 17.

[60] *Id*. at 15.

court may not decide whether a contract is continuous or severable on a motion to dismiss.

Defendant argues that "[a] continuous contract may be found where the scope and nature of contractual obligations and/or the full amount of prospective liability, *i.e.*, monetary damages arising from a breach, continue to grow or accumulate beyond the claimed date of breach, or cannot be determined at the time of the claimed breach."[61]  Defendant asserts that none of these elements apply to the Settlement Agreement.  Defendant writes that Plaintiff's own pleadings and allegations shows that Plaintiff's position is that "the Agreement secured a discrete, defined and strictly quantifiable obligation at the time of formation, which [Plaintiff] sought to invoke as early as 2013."[62]

## **Standard of Review**

Pursuant to Delaware Superior Court Civil Rule 59(e), a party may move for reargument within five days of the Court's decision.[63]  A Motion for Reargument

---

[61] *Id.* at 8.

[62] *Id.*

[63] Delaware Superior Court Civil Rule 59(e) states:

> A motion for reargument shall be served and filed within 5 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 5 days after service of such motion, the opposing party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted. A copy of the motion and answer shall be furnished forthwith by the respective parties serving them to the Judge involved.

20

will be granted only if "the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[64]  As such, a "motion for reconsideration or reargument is not an opportunity to rehash arguments already decided by the Court, or to present new arguments that were not previously raised."[65]

## Discussion

In granting Defendant's Motion to Dismiss, the Court did not misapprehend the law or the facts in this case.[66]  Furthermore, Plaintiff presents no controlling precedent or legal principles that would have changed the outcome of the Court's

---

[64] *Strong v. Wells Fargo Bank*, 2013 WL 1228028, at *1 (Del. Super. Jan. 3, 2013).

[65] *TIBCO Software Inc. v. NThrive Revenue Systems, LLC*, 2020 WL 86829, at *1 (Del. Super. Jan 6, 2020).

[66] Also, Plaintiff's concern about the lack of oral argument is unsupported by the law. Delaware courts have consistently recognized that "[o]ral argument is at the discretion of the Court." *Castillo v. Clearwater Ins. Co.*, 2012 WL 1410071, at *1 (Del. Jan. 25, 2012); *Sheppard v. State Dept. of Health and Social Services*, 2004 WL 838837, at *1 (Del. Apr. 15, 2004); *Gallagher v. Long*, 2013 WL 718773, at *4 (Del. Ch. Feb. 28, 2013); *State v. Maurer-Carter*, 2005 WL 975642, at *1, n.1 (Del. Ct. Com. Apr. 27, 2005).  *See also Adchemy, Inc. v. Plateau Data Services, LLC*, 2018 WL 496897, at *2 (Del. Super. Jan. 18, 2018) ("Briefing and oral argument, while generally subject to the rules of procedure, are entirely within the discretion of the Court."); *Bon Ayre Land LLC v. Bon Ayre Cmty. Ass'n,* 2015 WL 2077555, at *1 (Del. Super. Apr. 15, 2015) ("The Appellant also argues the Court erred in failing to schedule oral argument.  Oral argument is granted at the discretion of the Court and in the present case, the Court decided it was neither necessary nor helpful."). *See also* Delaware Superior Court Civil Rule 78(c) ("There will be no oral argument unless scheduled by the Court, except as may be otherwise expressly provided by statute or rule."). Furthermore, a video hearing, due to the pandemic, was held on the Motion for Reargument and Plaintiff was afforded adequate opportunity to make its case against dismissal.

decision. Accordingly, Plaintiff's Motion for Reargument is Denied and the Motion to Dismiss is Granted.

The law is clear that "[T]he proper interpretation of language in a contract is a question of law" for the Court[67] and "a motion to dismiss is a proper framework for determining the meaning of contract language."[68] The Delaware Supreme Court has instructed:

> The Court will interpret clear and unambiguous terms according to their ordinary meaning. Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language. A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, an ambiguity exists when the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings.[69]

Furthermore, the Court "will not torture contractual terms to create ambiguity."[70]

Here, the terms of the Settlement Agreement are not ambiguous or fairly susceptible to Plaintiff's interpretation. Although Plaintiff cites Paragraphs 7 and 18 of the Settlement Agreement to support its claim,[71] neither of these paragraphs

---

[67] *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *2 (Del. Super. Sept. 25, 2015).

[68] *Id.*

[69] *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[70] *Amtower v. Hercules Inc.*, 1999 WL 167740, at *12 (Del. Super. Feb. 26, 1999).

[71] Plaintiff's Complaint, at 3.

state, explicitly or implicitly, or suggest in any way that Defendant has any obligation (continuous or otherwise) to cooperate with the Pennsylvania Litigation. In fact, Paragraph 7 expressly releases and discharges Defendant from any claim that could arguably be related to the Pennsylvania Litigation. Paragraph 7 states that if the City of Newark[72] "become[s] a party to the [Pennsylvania] Litigation,[73] or [is] a party to any separate litigation or proceeding related in any way to the [Pennsylvania] Litigation, then [Plaintiff]… hereby fully release[s] and discharge[s] [the City of Newark] from any claims or damages in the [Pennsylvania] Litigation or any separate litigation or proceedings related to the [Pennsylvania] Litigation."[74]

That paragraph further states that "[i]f a claim of any nature and by any party, including but not limited to a claim for indemnification or contribution, is brought against [the City of Newark] in the [Pennsylvania] Litigation, or in separate litigation or proceedings related to the [Pennsylvania] Litigation, [Plaintiff] agree[s] to: (1) pay all attorneys' fees, expert fees, and costs incurred by [the City of Newark] in defense of the [Pennsylvania] Litigation, or separate litigation or proceedings related

---

[72] Paragraph 7 of the Settlement Agreement refers to Defendant as the "Newark Parties."

[73] The Settlement Agreement states: "The litigation in which the possible claims against the Cottrell Firm might be asserted is referred to as 'the Litigation'." Settlement Agreement, at ¶ 7 (attached to Plaintiff's Complaint as Exhibit A). To maintain consistency with the rest of this Opinion, and to avoid confusion, this Court renamed it the "Pennsylvania Litigation."

[74] Settlement Agreement, at ¶ 7 (attached to Plaintiff's Complaint as Exhibit A).

to the [Pennsylvania] Litigation; and (2) indemnify, defend, and hold [the City of Newark] harmless from all actions, causes of action, claims, demands, costs, liabilities, expenses and damages (including attorneys' fees) arising out of, or in connection with any claim in the [Pennsylvania] Litigation or any separate litigation or proceedings related to the [Pennsylvania] Litigation."[75]

Additionally, Paragraph 5 of the Settlement Agreement is a general release of Defendant. It states that Plaintiff "fully, finally and completely" releases Defendant "from any and all claims, demands, damages, costs, expenses, liability, actions, causes of actions, or claims of liability or responsibility of any kind whatsoever" that Plaintiff "now ha[s] or may hereafter have on account of, or arising out of any matter or thing which has happened, developed or occurred prior to the signing of this Agreement…"[76]

Moreover, although Paragraph 18 of the Settlement Agreement requires the parties to cooperate to effectuate the purposes of the Settlement Agreement,[77] there

---

[75] *Id.*

[76] *Id.* at ¶ 5.

[77] *See Id.* at ¶ 18. The stated purpose of the Settlement Agreement is "to settle [the Federal Litigation] in its entirety and all existing disputes among them under the terms and conditions" stated in the Settlement Agreement. *Id.* at 1. This purpose is reflected in several paragraphs. Paragraph 2 states that Defendant will pay Plaintiff the sum of $10,600,000.00 in settlement of the Federal Litigation. Paragraph 3 states, that upon Defendant's payment, the parties agree to cause their counsel to execute a stipulation of dismissal with prejudice for all appeals filed in the Federal Litigation. In addition, Plaintiff agreed to satisfy and discharge any and all outstanding judgments against Defendant in relation to the Federal Litigation by filing a satisfaction of judgment with the District Court. Paragraph 4 provides that Plaintiff will indemnify and defend Defendant for any

are no provisions of the Settlement Agreement that can be read as imposing a continuing obligation on Defendant to assist in Plaintiff's Pennsylvania Litigation. This Court will not "create a new contract with rights, liabilities and duties to which the parties had not assented."[78]

Furthermore, Plaintiff has not challenged the formation of the contract. Paragraph 12 of the Settlement Agreement clearly states that the parties were "represented by counsel," "act[ed] of [their] own free will," were "afforded a reasonable time to read and review" its terms, and "voluntarily enter[ed] into [it] with full knowledge of its provisions and effects."[79] The record is clear that Plaintiff had initiated, was aware of, and was involved in the Pennsylvania Litigation when it entered into the Settlement Agreement. Although Plaintiff implied at the hearing that it had contemplated problems with its Pennsylvania Litigation but did not include protective language when Plaintiff signed the Settlement Agreement, the Agreement was not entered into rashly, unintelligently, or without legal advice.

---

costs arising from any claim by any subcontractor to Plaintiff for non-payment for work done for Plaintiff pursuant to the construction contract between Plaintiff and Defendant. Paragraph 5 represents Plaintiff's and Federal Insurance Company's general release of Defendant. Paragraph 6 represents Defendant's general release of Plaintiff and Federal Insurance Company. Paragraph 7 is a joint tortfeasor release to hold harmless and indemnify Defendant in relation to the Pennsylvania Litigation.

[78] *Lorillard Tobacco Co. v. American Legacy Foundation*, 903 A.2d 728, 739 (Del. 2006).

[79] Settlement Agreement, at ¶ 12 (attached to Plaintiff's Complaint as Exhibit A).

Furthermore, "[w]here no ambiguity is present, the Court will not resort to extrinsic evidence in order to aid in interpretation" of the contract.[80] Here, the Court does not find ambiguity and, in such a case, "evidence outside the four corners of the document as to what was actually intended is generally inadmissible."[81] To determine the meaning of a contract, "[t]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."[82] Thus, although Plaintiff arguably anticipated difficulties with Defendant in Plaintiff's involvement in other litigation, under the circumstances of this case,[83] the Court will not consider what a party may have thought but failed to put in writing.

Furthermore, Paragraph 10 of the Settlement Agreement definitively states that the provisions of the Settlement Agreement, except as otherwise stated in the Settlement Agreement, "constitutes the entire understanding and agreement among the Parties… [and] supersedes all prior negotiations, agreements, arrangements, and

---

[80] *Mcilquham v. Feste*, 2002 WL 244859, at *5 (Del. Ch. Feb. 13, 2002) ("Moreover, [m]erely because the thoughts of party litigants may differ relating to the meaning of stated language does not in itself establish in a legal sense that the language is ambiguous.").

[81] *Universal v. Studios Inc. v. Viacom Inc.* 705 A.2d 579, 589 (Del. Ch. 1997).

[82] *State Human Relations Com'n ex rel. Price v. Apartment Communities Corp.*, 2007 WL 3131787, at *1 (Del. Super. Oct. 26, 2007).

[83] The Settlement Agreement was reached after Federal Litigation and skilled negotiations.

26

understanding, both oral and written, between the Parties…"[84]   The parties also

agreed that the Settlement Agreement is not to be modified or amended "except in a

writing signed by the Parties."[85]

Moreover, even if there had been an obligation, the statute of limitations bars

Plaintiff's action.   Case law clearly establishes that a settlement agreement is a

contract.[86]  Furthermore, the parties do not dispute that the Settlement Agreement at

issue is a contract.   Pursuant to 10 *Del. C.* § 8106, the statute of limitations for a

breach of contract claim is "three years from the date that the cause of action

accrued."[87]  Generally, "the statute of limitations accrues at the time the contract is

broken, not at the time when actual damage results or is ascertained."[88]

---

[84] *Id* at ¶ 10.

[85] *Id*.

[86] *Crescent/Mach I Partners, L.P. v. Dr Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. Dec. 1, 2008) ("Delaware law favors settlements and treats them as binding contracts."), cited favorably in *Samuel L. Guy v. City of Wilmington*, 2020 WL 2511122, at *2, fn. 6 (Del. Super. May 15, 2020); *Trexler v. Billingsley*, 2017 WL 2665059, at *3, f.n. 14 (Del. June 21, 2017) ("Settlement Agreements are contracts.") *quoting Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010). *See also In Matter of Appraisal of Enstar Corp.*, 1989 WL 11139, at *5 (Del. Ch. Jan. 31, 1989); *Parker-Hannifin Corp. v. Schlegal Electronics Materials, Inc.*, 589 F.Supp.2d 457, 461 (Del. D. Dec. 9, 2008).

[87] *Levey v. Brownstone Asset Management, LP*, 76 A.3d 764, 768 (Del. Aug. 27, 2013).

[88] *Lavender v. Koenig*, 2017 WL 443696, at *3 (Del. Super. Feb. 1, 2017) (internal quotation marks removed).  *See also Greto v. Joseph L. Messa, Jr. & Associates, P.C.*, 2018 WL 3559262, at *2 (Del. Super. July 23, 2018) ("a cause of action for breach of contract accrues at the time of the breach."); *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del. Super. May 26, 1969) ("A cause of action for breach of contract accrues at the time of the breach and a cause of action in tort accrues at the time of the injury."); *Eshelman v. Thomson*, 1979 WL 193327, at *1 (Del. Super. Jan. 29, 1979) ("The cause of action for breach of a contract accrues at the time of the

27

Plaintiff repeatedly alleges in its Complaint that Defendant materially breached the Settlement Agreement.[89] Moreover, Plaintiff requested that the Court declare that Defendant "materially breached the Settlement Agreement."[90] Additionally, Plaintiff unequivocally defined the Defendant's lack of cooperation (related to Plaintiff's Pennsylvania Litigation) as the alleged breach. The Complaint asserts:

> Based on the *lack of cooperation* by [Defendant], and despite its knowledge of the relevance of the documents and depositions in [Plaintiff's] action against [Cottrell]; [Defendant] has assisted [Cottrell,] and denied [Plaintiff] access to relevant discovery. []

breach"); *Ensminger v. Merritt Marine Coast, Inc.*, 597 A.2d 854, 856 (Del. Super. Dec. 22, 1988) ("An action for breach of contract accrues at the time of the breach."); *Kaplan v. Jackson*, 1994 WL 45429, (Del. Super. Jan. 20, 1994) ("Delaware courts have… held a cause of action for breach of contract accrues at the time of the breach."); *Christiana Marine Service Corp. v. Texaco Fuel and Marine Marketing*, 2002 WL 1335360, at *3 (Del. Super. June 13, 2002) ("The 3 year limitation on cause of actions for an alleged breach of contract accrues at the time of the breach.").

[89] Plaintiff's brief and submissions characterized Defendant's refusal to divulge its communications as a breach. They include:

> "[Plaintiff] believes that this conduct is a material *breach* of the Settlement Agreement." Plaintiff's Complaint, at 12. (emphasis added).

> "[Defendant's] actions constitute a material *breach* of the Settlement Agreement." *Id*. at 13. (emphasis added).

> "An actual, present, and justiciable controversy exists between [Plaintiff] and [Defendant] concerning [Defendant's] obligations pursuant to the Settlement Agreement and whether the actions of [Defendant] have been a material *breach* of the Settlement Agreement." *Id*. at 13. (emphasis added).

> "[Plaintiff] is entitled to judgment from this Court declaring [Defendant's] obligations pursuant to the Settlement Agreement and that [Defendant] has materially *breached* the Settlement Agreement." *Id*. (emphasis added).

[90] Plaintiff's Complaint, at 13 (emphasis added).

[Plaintiff] believes that *this conduct is a material breach of the Settlement Agreement*.[91]

Additionally, Plaintiff's Complaint clearly sets forth when the alleged breach of cooperation by refusal to provide the requested information first occurred. Plaintiff states that the refusal was "[i]n October 2013" when Plaintiff "requested [Defendant's] cooperation".[92] As such, Plaintiff was aware of the alleged breach in October 2013. Taking all allegations in Plaintiff's Complaint as true, Plaintiff had three years from the date of the alleged breach to file the instant action, which it failed to do.

Furthermore, despite Plaintiff's argument that the statute of limitations does not apply because Defendant allegedly had a continuing obligation, this Court has already found that the continuing contract or continuing breach doctrine[93] does not apply if "a plaintiff could allege a prima facie case for breach of contract after a single incident… even if a defendant engages in numerous repeated wrongs of similar, if not the same, character over an extended period."[94] As in *Ocimum*

---

[91] *Id*. at 12.

[92] *Id*. at 10.

[93] In *Ocimum Biosolutions (India) Limited v. AstraZeneca UK Limited*, this Court stated that the "continuing breach doctrine" is alternatively called the "continuing contract doctrine." 2019 WL 6726836, at *14, n.127 (Del. Super. Dec. 4, 2019).

[94] *Id*. at *15.

*Biosolutions*, where the court found that the plaintiff could have alleged a claim after the initial breach, here, Plaintiff also could have alleged a claim within three years of Defendant's refusal. Here, after Defendant's clear refusal to satisfy Plaintiff's request, Plaintiff's subsequent and repeated efforts do not trigger the continuing claim or continuing breach doctrine. Plaintiff could have brought the same claim after the Defendant's refusal that Plaintiff now raises in the instant case. As such, the continuing claim or continuing breach doctrine is not applicable to Plaintiff's claim.[95]

Moreover, *American Tower Corp. v. Unity Communications, Inc.*[96] and *SPX Corp. v. Garda USA, Inc.*,[97] which Plaintiff cites in its Motion for Reargument, are distinguishable from the instant case and do not change the outcome of this Court's decision to grant Defendant's Motion to Dismiss. In *American Tower Corp.* and *SPX*, the Court found that it was inappropriate to grant a motion to dismiss based on the statute of limitations because there were questions of fact relating to the parties'

---

[95] Although Plaintiff attempts to distinguish *Ocimum Biosolutions* from the instant case because *Ocimum Biosolutions* involved the unauthorized use of a trade secret, the court in *Ocimum Biosolutions* does not suggest that its holding is limited to breaches involving trade secrets. So too, in *AM General Holdings LLC v. The Renco Group, Inc.*, the Court of Chancery also stated that the continuing breach doctrine does not apply to a breach of contract claim where the "plaintiff could have alleged a *prima facie* case for breach of contract… after a single incident." 2016 WL 4440476, at *12 (Del. Ch. Aug. 22, 2016).

[96] *American Tower Corp. v. Unity Communications, Inc.*, 2010 WL 1077850 (Del. Super. Mar. 8, 2010).

[97] *SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398 (Del. Super. Dec. 6, 2012).

intent as to whether duties imposed by contract were intended to be continuing obligations.

In *American Tower*, the Court concluded that the inquiry into "whether the obligations under a contract are continuous or severable turns on the parties' intent, which may be ascertained through the contract's terms and subject matter, taken together with pertinent facts and circumstances surrounding the formation."[98] Although that Court held that "the question of the parties' intent cannot be resolved on a motion to dismiss, as it is a factual issue that must be resolved by trial,"[99] the Court suggested that dismissal is appropriate "if plaintiff would not be able to recover under any reasonably conceivable set of circumstances."[100] In the instant case, the contract is unambiguous and its formation is not an issue.

Similarly, the *SPX* Court stated that its "inquiry is simply whether sufficient pleadings of [the defendant's] continuing obligation exist to support [the plaintiff's] assertion" that the obligation in the contract constitutes a continuing obligation.[101] The *SPX* Court found that the pleadings were sufficient to support the assertion that

---

[98] *American Tower Corp. v. Unity Communications, Inc.*, 2010 WL 1077850, at *2 (Del. Super. Mar. 8, 2010).

[99] *Id.*

[100] *Id.*

[101] *SPX Corp. v. Garda USA, Inc.*, 2012 WL 6841398, at *2 (Del. Super. Dec. 6, 2012).

the obligation was ongoing. As such, the Court in *SPX* found that it was "not in a position to find that there are no reasonably inferable facts under which [the plaintiff] would be unable to prevail" and, therefore, dismissal was inappropriate.[102] Here, in contrast, the Court finds that Plaintiff has not submitted sufficient pleadings of a continuous obligation to support its assertion. Dismissal is appropriate because Plaintiff would not be able to recover under any reasonable set of circumstances.

Unlike *American Tower* and *SPX,* Plaintiff alleges a continuous obligation that simply does not exist under the plain and unambiguous language of the Settlement Agreement. Plaintiff has not shown that the agreement imposed any obligation of assistance in the Pennsylvania Litigation or that there is a question of fact related to the parties' intent concerning whether the agreement creates a *continuing obligation* of assistance in the Pennsylvania Litigation.[103]

While Plaintiff has presented cases not previously cited in its earlier submissions and has had an opportunity to argue its case, Plaintiff has not shown that the Court misapprehended the terms of the Settlement Agreement or the facts as set forth in Plaintiff's briefs. Additionally, although Plaintiff contends that the record needs further development, Plaintiff has not articulated what additional

---

[102] *Id.* at *3.

[103] Although Plaintiff maintains that the duties in the Settlement Agreement are continuous, the Court finds that, under the plain language of the Settlement Agreement, assisting Plaintiff in the Pennsylvania Litigation is not one of those duties.

information or discovery would require examination beyond the four corners of the Settlement Agreement.

## Conclusion

Accordingly, for the foregoing reasons, Plaintiff's Motion for Reargument is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

*/s/ Diane Clarke Streett*
Diane Clarke Streett, Judge