TYSON FOODS, INC. and Lasso Acquisition Corp., Defendants, Cross–Claim Defendants and Counterclaim Plaintiffs Below, Appellants,

v.

AETOS CORP., Pelican Limited Partnership, Stark Investment, L.P. and Shepherd Investments International, Ltd., Objectors Below, Appellees,

and

Baruch Mappa, Michael Taragin, David Shaev, Charles Miller, Olga Fried, Peter Robbins, Jerry Krim, Jeffrey Kassoway, Harriet Burt, Eric Meyer, Louise E. Murray, Marvin Masel and Rocco Landesman, Plaintiffs Below, Appellees,

and

IBP, Inc., Defendant, Cross–Claim Plaintiff, and Counterclaim Defendant Below, Appellee.

No. 124,2002.

Supreme Court of Delaware.

Submitted: Dec. 12, 2002.
Decided: Feb. 28, 2003.

Anthony W. Clark, Esquire (argued), Robert S. Saunders, Esquire, Julie A. Tostrup, Esquire, and Cynthia E. Carrasco, Esquire, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware, for Appellants Tyson Foods, Inc. and Lasso Acquisition Corporation.

John L. Reed, Esquire and Timothy R. Dudderar, Duane Morris LLP, Wilmington, Delaware. Michael H. Schaalman, Esquire (argued) and Cristina D. Hernandez–Malaby, Esquire, Quarles & Brady LLP, Milwaukee, Wisconsin. Mark C. Gardy, Esquire, and Karen E. Fisch, Esquire, Abbey Gardy LLP, New York, New York, for Appellees Aetos Corp., Pelican Limited Partnership, Stark Investments, L.P., and Shepherd Investments International, Ltd.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

WALSH, Justice.

This is an appeal from a decision of the Court of Chancery denying vacatur of previous rulings by that Court granting, *inter alia,* specific performance of the merger agreement between Tyson Foods, Inc. ("Tyson") and IBP, Inc. ("IBP"), as well as the approval of the settlement of related shareholder claims. The background of this controversy is set forth in a previous decision of this Court limiting the scope of this appeal to the February 11, 2002 decision of the Court of Chancery denying vacatur. *Tyson Foods, Inc., et al. v. Aetos Corp., et al.,* 809 A.2d 575 (Del.2002). We recount here only those facts necessary for the final disposition of this matter. Because we believe the Court of Chancery applied the appropriate vacatur standard, we affirm.

## I.

On January 1, 2001, Tyson and IBP entered into a merger agreement (the "Merger Agreement"or the "Agreement"). Tyson later terminated the Merger Agreement on March 29, 2001 purportedly due to IBP's restatement of seven quarters of historical financial information. Tyson also simultaneously filed an action in Arkansas seeking a declaratory judgment that it had the right to terminate the Agreement. The next day, IBP sought specific performance of the Merger Agreement in the Court of Chancery.

After an expedited trial, the Court of Chancery determined that Tyson's attempt

to terminate the Merger Agreement was improper, and thus granted specific performance of the Agreement. Rather than seek an interlocutory appeal,[1] Tyson reached settlement agreements with IBP and the IBP stockholders (the "Class") respectively. The settlement agreement with the Class was subject to approval by the Court of Chancery.

On August 3, 2001, the trial court approved the Class settlement, subject to a "carve-out" of federal securities claims filed by a sub-class of IBP stockholders (the "Sub–Class"). The merger finally closed on September 28, 2001. Inexplicably, Tyson waited until January 7, 2002 to request the Court of Chancery to vacate its previous orders, including its post-trial opinion, or, in the alternative, to enter a final order[2] so that Tyson could appeal to this Court. On February 11, 2002, the trial court denied Tyson's motion in its entirety. *See In re IBP, Inc., Shareholders Litig.*, 793 A.2d 396, 410 n. 39 (Del.Ch. 2002) (the "Vacatur Opinion").

On March 12, 2002, Tyson appealed the Vacatur Opinion, as well as the subsidiary orders and opinions spawned by the controversy. Thereafter, the Sub–Class moved to dismiss six of the seven rulings appealed by Tyson as either time barred or moot. On July 24, 2002 we granted the Sub–Class's motion and limited the scope of this appeal to the trial court's February 11, 2002 Vacatur Opinion.

## II.

The primary issue on appeal is whether the Court of Chancery applied the appropriate standard when it denied Tyson's vacatur motion. Specifically, Tyson pits Delaware's so-called "interests of justice" standard, articulated in *Stearn v. Koch,* 628 A.2d 44 (Del.1993), against what it perceives to be the more stringent "federal standard" set forth in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), and argues that the trial court improperly relied upon the federal standard. Conversely, the Sub–Class argues that the Court of Chancery applied the appropriate vacatur standard in as much as it relied upon both *Stearn* and *Bonner Mall.* While we review the trial court's denial of Tyson's motion to vacate for an abuse of discretion, *Epstein v. Matsushita Elec. Indus. Co.,* 785 A.2d 625, 633–634 (Del.2001), we must first determine, as a matter of law, the appropriate standard to be applied when addressing a motion for vacatur.

In Delaware, the equitable remedy of vacatur is available in only a narrow set of circumstances. As a general rule, when a case becomes moot at some point during the appellate process, this Court

---

**1.** Tyson contends that it was subliminally prohibited from seeking an interlocutory appeal due to the specter of a "huge" damage award if it delayed consummation of the merger. We do not agree. The trial court merely determined that specific performance was the appropriate remedy, and noted in its opinion that the "damages issue has largely been obviated, depending on the parties' cooperation and the outcome on appeal." *In Re IBP, Inc. Shareholders Litig.*, 789 A.2d 14, 23 n. 4 (Del. Ch.2001). Rather than "prohibiting" Tyson from taking an interlocutory appeal, the trial court simply concluded—largely on the basis of John Tyson's testimony, elicited by his counsel—that Tyson might prefer specific performance because in the alternative "[a]ny damages award [would] be huge and [would] result in no value to Tyson." *Id.* at 83 nn. 203–204.

**2.** Tyson assumed that no final order had previously been issued. This assumption was contrary to the position taken by the trial court. *In Re IBP, Inc. Shareholders Litig.*, 793 A.2d 396, 401 (Del.Ch.2002) ("For reasons I have already stated, I conclude that a final judgment was entered in this case on August 3, 2001.") (footnote omitted).

will vacate the judgment below where the interests of justice so require. *See Stearn,* 628 A.2d at 46 (citations omitted); *see also Glazer v. Pasternak,* 693 A.2d 319, 321 (Del.1997) ("On request, this Court will vacate the trial court's decision if the appeal has become moot and justice so requires.") (citing *Stearn* ). This so-called "interests of justice" standard is no doubt met where the party seeking appellate review is *thwarted* by some event beyond its control. *Stearn,* 628 A.2d at 46–47 (citing, *inter alia, United States v. Munsingwear Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). In such circumstances, vacatur is necessary to prevent the unappealable judgment from obtaining "precedential or preclusive *res judicata* effect[.]" *Id.* at 47.

■ The federal vacatur standard now embodied in *Bonner Mall* is not a significant departure from the standard previously provided in *Munsingwear.* Indeed, *Bonner Mall* does not necessarily announce a new federal vacatur standard, but rather it sketches the outer limits of the existing *Munsingwear* standard. *Bonner Mall,* 513 U.S. at 24–29, 115 S.Ct. 386 (noting that moot cases are disposed of in a manner "most consonant to justice[,]" and holding that "mootness by reason of settlement does not justify vacatur" unless "exceptional circumstances" exist) (citations omitted). In other words, the equitable remedy of vacatur is still available in the federal forum where a party is "frustrated by the vagaries of circumstance[ ]" and justice requires that he not be "forced to acquiesce in the judgment." *Bonner Mall,* 513 U.S. at 25 and n. 3, 115 S.Ct. 386. Where, however, "[a] judgment is not unreviewable, but simply unreviewed" because of settlement, vacatur is inappropriate. *Id.* at 25, 115 S.Ct. 386.

Tyson attempts to elevate this dispute into a fundamental conflict between State and federal standards, and urges this Court to preserve Delaware's so-called "interests of justice standard." As the trial court correctly noted, however, the vacatur standard set forth in *Stearn* is drawn entirely from federal precedent. *See In re IBP,* 793 A.2d at 406 ("*Stearn's* repeated citation to federal authority suggests that it is proper to read that case contextually, as an adoption by our Supreme Court of a well-reasoned body of law articulated by the federal court."). Where Tyson perceives conflict, we perceive consistency.

■ The United States Supreme Court's discussion of the federal vacatur standard in *Bonner Mall* demonstrates the harmony with Delaware's standard. As previously noted, the United States Supreme Court stressed the overarching concern for the just resolution of moot cases. *Bonner Mall,* 513 U.S. at 24–25, 115 S.Ct. 386 (noting that moot cases are resolved in a manner "most consonant to justice" and that where the "ends of justice exact that the judgment below should not be permitted to stand" dismissal may be appropriate). As a precursor to considerations of justice, federal courts are instructed to consider whether the case is mooted by happenstance, or alternatively, whether the mooting event was assented to by the party seeking vacatur. *Id.* at 25, 115 S.Ct. 386 (stressing the "equitable tradition of vacatur."). Thus, where a party has "voluntarily forfeited his legal remedy" through settlement he "surrender[s] his claim to the equitable remedy of vacatur[,]" unless "exceptional circumstances" counsel otherwise. *Id.* at 25–29, 115 S.Ct. 386.

■ *Bonner Mall* is readily reconciled with prior precedent in this area, and it is indeed consistent with the spirit of *Stearn.* Justice does not require vacatur where the parties voluntarily settle a matter unless exceptional circumstances abound. Here, not only did Tyson voluntarily settle this

matter with IBP and the Class, but it also agreed to the "carve-out" for the Sub–Class. Rather than take an appeal from the trial court's August 3, 2001 final order, Tyson adopted a course of inaction with respect to its procedural options. Despite Tyson's contention that it was strong-armed into the settlement and corresponding merger, we cannot conclude that "exceptional circumstances" existed to permit an appropriate application of vacatur.

## III.

 Because *Bonner Mall* is not inconsistent with *Stearn,* we cannot conclude that the trial court abused its discretion by relying upon both federal and State articulations of the standard for vacatur, *In re IBP,* 793 A.2d at 406,[3] and therefore we AFFIRM the judgment of the Court of Chancery.

---

**3.** "In accordance with the reasoning of [*Bonner Mall*] and *Stearn,* I conclude that Tyson's motion to vacate should be denied." *Id.* (footnotes omitted).