CRESCENT/MACH I PARTNERS L.P., Jefferies & Co., Inc., Shared Opportunity Fund II LLC, Shared Opportunity Fund IIB LP, TCW/Crescent Mezzanine Investments Partners, L.P., TCW/Crescent Mezzanine Partners, L.P., TCW/Crescent Mezzanine Trust, TCW Leveraged Income Trust, L.P., TCW Leveraged Income Trust II, L.P., Brown University, Richard Handler Martha Handler, Petitioners Below, Appellants,

v.

DR PEPPER BOTTLING CO. OF TEXAS, Respondent Below, Appellee.

No. 330, 2008.

Supreme Court of Delaware.

Submitted: Oct. 22, 2008.
Decided: Dec. 1, 2008.

Michael A. Weidinger, Esquire of Pinckney, Harris & Weidinger, LLC, Wilmington, DE; Of Counsel: Michael Swartz (argued) and Paul Derby, Esquires, of Hennigan, Bennett & Dorman, LLP, Los Angeles, CA, for Appellants.

Jon E. Abramczyk (argued), David J. Teklits and Justin B. Shane, Esquires, of

Morris, Nichols, Arsht & Tunell, LLP, Wilmington, DE, for Appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

JACOBS, Justice:

Crescent/Mach I Partners L.P. and other minority shareholders of Dr Pepper Bottling Holdings, Inc. ("Holdings"), the plaintiff-petitioners below, appeal from a Court of Chancery order modifying an appraisal opinion. A settlement between the parties had mooted the appraisal opinion, and as a consequence that opinion no longer had any legal effect. Because any modification thereof was also moot, we must reverse and vacate the Court of Chancery's modifying order.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

This action arises out of the October 8, 1999, acquisition by merger of Holdings, a beverage packer and distributor, by a wholly-owned subsidiary of Dr Pepper/Seven–Up Bottling Group, Inc. ("Dr Pepper"). The merger consideration was $25 per Holdings share. Before the merger closed, certain minority shareholders of Holdings (the "Investors"[2]) dissented from the merger and brought a statutory appraisal action against Holdings. The Investors also filed a related fiduciary duty action against Jim L. Turner, who was

---

1. The facts are summarized from the decisions below. *See Crescent/Mach I Partners, L.P. et al. v. Dr Pepper Bottling Co.*, C.A. 17711 (Del. Ch.). The appraisal and fiduciary duty opinion is available at 2007 WL 1342263 (Del. Ch. May 2, 2007). The Rule 60(a) opinion is available at 2008 WL 2440303 (Del.Ch. June 4, 2008).

2. The plaintiffs in the fiduciary duty action, who are also the petitioners in the appraisal action, are: Brown University, 20,000 shares; Crescent/Mach I Partners L.P., 50,000 shares;

Jeffries & Co., Inc., 193,410 shares; Richard Handler and Martha Handler, 50,000 shares; Shared Opportunity Fund II LLC, 30,000 shares; Shared Opportunity Fund IIB LP, 259,313 shares; TCW/Crescent Mezzanine Investment Partners, L.P. 513 shares; TCW/Crescent Mezzanine Partners, LP, 18,773 shares; TCW/Crescent Mezzanine Trust, 5,714 shares; TCW Leveraged Income Trust, L.P., 236,300 shares; and TCW Leveraged Income Trust II, L.P., 150,000 shares.

Holdings' chief executive officer, director, and majority shareholder. The cases were tried on a consolidated basis before the Court of Chancery in the summer of 2006. The court issued its post-trial opinion and judgment on May 2, 2007.

In the appraisal action, the Court of Chancery awarded the petitioners $32.31 per Holdings share, together with pre and post judgment interest. The court also dismissed the fiduciary duty action. On May 17, 2007, the court entered a stipulated Final Order and Judgment, adjudicating that Dr Pepper owed the petitioners $47,170,050.32 (based on the $32.31 share price) plus costs and interest.

On June 1, 2007, Dr Pepper and the Investors entered into a settlement agreement to "fully and finally resolve" both actions. Dr Pepper agreed to pay the Investors $47,189,780.37 plus interest. The parties determined that additional sum by starting with the court's award and adding the Investors' litigation costs in the appraisal action, and from that combined figure then subtracting Dr Pepper's costs in the fiduciary duty action.

Three months after the settlement agreement was executed, a disinterested financial analyst, who was preparing an article, discovered analytical errors in the court's appraisal, and alerted Dr Pepper to that fact.[3] The Court of Chancery had based its appraisal valuation on a discounted cash flow ("DCF") analysis of Holdings. A DCF calculation takes into account cash flow, projected earnings, expenditures, taxes, and depreciation in determining the present value of a business. The appraiser first estimates the value of the firm's cash flow for a specific projection period, using contemporaneous management projections. Then, the value of the business attributed to cash flow from the post-pro-

jection period is estimated in order to arrive at a terminal value. Finally, the projected cash flow and the terminal value are discounted to present value to determine the business' "fair value."

In its DCF analysis, the Court of Chancery made two errors, the first more significant than the second. First, the Court of Chancery erroneously included the value of Net Operating Losses ("NOLs") in determining the terminal value of Holdings. NOLs are used to offset tax liability, and thereby increase the value of the enterprise. Holdings' NOLs were set to expire before the end of the five year projection period used to calculate the DCF. The Court of Chancery, however, also mistakenly included the NOLs when determining Holdings' terminal value. That court mistakenly treated the NOLs as recurring perpetually, although in fact the NOLs expired in less than five years. That error inflated the appraised value by $2.40 per share. The second (and less significant) error resulted from the court's failure to account for the NOLs in the 1999 stub year. That error decreased Holdings' value by $0.13 per share. Taking both valuation errors into account, Holdings was worth $30.04 per share at the time of the merger, not $32.31 as the Court of Chancery had initially determined.

One month after it learned of these errors, Dr Pepper sought relief under Court of Chancery Rule 60(a). Dr Pepper requested the Court of Chancery to correct its opinion and determine the fair value of Holdings at $30.04 per share as of the merger date. Dr Pepper argued that Rule 60(a) gave the court the power to correct a judgment based on merely clerical errors. The Investors opposed the Rule 60(a) motion, arguing that the errors were substan-

---

**3.** *See* Gilbert E. Matthews, Errors and Omissions in DCF Calculations: A Critique of De-laware's Dr Pepper Appraisal, BUS. VALUATION UPDATE, Oct. 2007, at 1, 8–11.

tive, not clerical, and therefore fell outside the scope of Rule 60(a). Moreover and in any event, the Investors urged, the settlement had rendered Dr Pepper's motion moot, and therefore no longer subject to amendment under any Rule.

The Court of Chancery determined that the errors were computational and, thus, fell within the scope of Rule 60(a). The court also determined that the settlement agreement did not bar it from correcting the record under Rule 60(a), because the appraisal judgment was a public document. Accordingly, the Court of Chancery granted Dr Pepper's motion and amended its opinion to reflect the (correct) $30.04 per share valuation of Holdings. The Investors timely appealed to this Court.

### ANALYSIS

On appeal, the Investors argue that by addressing a settled case, the Court of Chancery exceeded the scope of its authority to modify a judgment under Court of Chancery Rule 60(a).[4] That Rule provides:

> Clerical mistakes in judgments, order or other parts of the record and errors therein arising from oversight or omis-sion may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the Court orders.

■ Dr Pepper responds that a court has inherent power to correct its errors even if the case is subsequently settled; therefore, the Court of Chancery properly applied Rule 60(a). We conclude, however, that the Court of Chancery exceeded its power by addressing a dispute that had become moot by operation of a settlement. Accordingly, we do not reach the question of the proper application of Rule 60(a) to this case.

■ We review questions of justiciability de novo.[5] "Delaware law requires that a justiciable controversy exist before a court can adjudicate properly a dispute brought before it."[6] Delaware courts analyze mootness and ripeness in determining whether a justiciable controversy exists.[7] Our law requires that a dispute not be moot and that it be ripe for adjudication to avoid wasting judicial resources on academic disputes.[8]

■ Delaware law favors settlements and treats them as binding contracts.[9]

---

**4.** Because Chancery Rule 60(a) is consistent with its counterpart Superior Court Civil Rule and Federal Rule of Civil Procedure, we look to precedent established under those rules where helpful. See Bolden–Wilson v. Hertrich's Corp., 2007 WL 2319783, at *2 (Del.Super. August 2, 2007).

**5.** See Candlewood Timber Group, LLC v. Pan Am. Energy, LLC, 859 A.2d 989, 997 (Del.2004) (subject matter jurisdiction reviewed de novo); see also Roark & Hardee LP v. City of Austin, 522 F.3d 533, 542 (5th Cir.2008) (all justiciability issues are reviewed de novo).

**6.** Warren v. Moore, 1994 WL 374333, at *2 (Del.Ch. July 6, 1994). Accord Multi–Fineline Electronix, Inc. v. WBL Corp., 2007 WL 431050, at *8 (Del.Ch. February 2, 2007).

**7.** See Multi–Fineline Electronix, 2007 WL 431050, at *8 (citations omitted); see also Bebchuk v. CA, Inc., 902 A.2d 737, 740 (Del. Ch.2006) ("The Delaware courts have announced justiciability rules that closely resemble those followed at the federal level.").

**8.** See Stroud v. Milliken Enter., Inc., 552 A.2d 476, 480 (Del.1989) (holding that the Delaware courts may not address moot cases); see also Warren, 1994 WL 374333, at *1–2 (noting that given a settlement between the parties, addressing the dispute would "result in an impermissible advisory opinion on a purely academic question.").

**9.** See Rowe v. Rowe, 2002 WL 1271679, at *3 (Del.Ch. May 28, 2002).

Here, the parties' settlement agreement "fully and finally resolve[d]" the dispute over the appraised value of the Holdings shares. Upon the execution of that agreement, the appraisal opinion ceased to govern the relationship between the litigating parties. With limited exceptions "[s]ettlement of a dispute between the parties . . . render[s] the case moot," making any remaining disagreements nonjusticiable.[10] Here, as part of their settlement agreement, the parties agreed to "waive all appellate rights." In voluntarily settling their dispute, both parties assumed the risk that there might be errors in the Court of Chancery's appraisal opinion. That is, by settling, the parties contractually gave up their right to contest pre-settlement rulings, even if those rulings were erroneous.[11]

■■■■ "Mootness by reason of settlement" is the term of art used to reject post-settlement efforts to vacate pre-settlement rulings.[12] Here, the parties' settlement foreclosed any action to modify the appraisal opinion because there was no longer a justiciable controversy:

> [Settlement] destroys (and appropriately so) the adversity between the parties such that a justiciable controversy . . . no longer exists. . . . [A]n adjudication [after settlement] . . . would result in an impermissible advisory opinion on a purely academic question.[13]

"[Rule 60(a) motions are] . . . denied when made to avoid the party's decision to settle the litigation. . . ."[14] In this case, after the parties settled, the appraisal opinion ceased to have any legal effect as a binding resolution of the dispute and the settlement mooted any pre-existing issues regarding the accuracy of the appraisal.

■■■■ Delaware courts do not address "disagreements that have no significant current impact."[15] Because the settlement agreement superseded the appraisal opinion as the document that controlled the relationship between the parties, a change in the appraisal opinion could have no legal effect, unless and until Dr Pepper first obtained a judicial rescission of the settlement agreement. No such rescission was obtained before Dr Pepper's Rule 60(a) motion was decided. We exercise special caution to ensure that matters that raise "novel" and "important" issues are ripe for adjudication.[16] By addressing Dr Pepper's motion where there was no ripe dispute, the Court of Chancery needlessly decided a previously unresolved and novel issue regarding Rule 60(a)'s application to errors in determining the value of corporate stock.[17]

■■■■ Dr Pepper argues that Rule 60(a) authorizes the court to correct errors "at

---

**10.** *International Union, U.A.W. v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir.1983). The exceptions are where the settlement moots only part of the case or misconduct "capable of repetition, yet evading review." Neither exception applies here.

**11.** *In re IBP, S'holders Litig.*, 793 A.2d 396, 397 (Del.Ch.2002), *aff'd by Tyson Foods v. Aetos Corp.*, 818 A.2d 145, 148 (Del.2003).

**12.** *Tyson Foods*, 818 A.2d at 148.

**13.** *Warren*, 1994 WL 374333, at *2 (Del.Ch. July 6, 1994).

**14.** Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 2851, at 230 (2d ed. 1995).

**15.** *Stroud v. Milliken Enter., Inc.*, 552 A.2d 476, 480 (Del.1989).

**16.** *Id.* at 481.

**17.** Namely, how Rule 60(a) should apply to a normalization error in the middle of a multicomponent fair value determination.

any time." Although the phrase "at any time" appears in many parts of Delaware's Rules of Civil Procedure,[18] interpreting that phrase so as to trump settled principles of justiciability would lead to absurd results. For example, such an interpretation would allow a party to seek summary judgment even after the case has been settled. The Chancery Rules regulate the conduct of litigation properly before that court, but they do not permit the court to expand its jurisdiction to include non-justiciable matters.[19]

The Vice–Chancellor reasoned that modification was proper, in part, because "judgments are public documents," relying on *In re IBP, Inc., Shareholders Litigation.*[20] *IBP* is inapposite. The *IBP* court's pronouncement that judicial decisions are public documents was for the purpose of explaining why a party cannot use a settlement to seek *vacatur* of pre-settlement rulings. Although judicial decisions are public records, that fact cannot empower a court to modify a judgment rendered moot by settlement, even if the judgment contains errors. To hold otherwise would distort the doctrine of mootness and undercut the finality of settlements.

### CONCLUSION

For the foregoing reasons, the Court of Chancery's Rule 60(a) judgment is reversed.

---

18. *See, e.g.,* Ch. Ct. R. 56; Super. Ct. Civ. R. 56; Ct. Com. Pleas Civ. R. 56, which all provide for a motion for summary judgment to be brought "at any time."

19. *See* Ch. Ct. R. 82, which provides, in relevant part: "[The Chancery Rules] shall not be construed to extend or limit the jurisdiction of the Court of Chancery...."

20. *See Crescent/Mach I Partners, L.P., et al. v. Dr Pepper Bottling Co.,* 2008 WL 2440303 at *5 (Del.Ch. June 4, 2008) citing *In re IBP, S'holders Litig.,* 793 A.2d 396, 409.