## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUPERNUS PHARMACEUTICALS, INC., | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) | |
| v. | ) | C.A. No. 2020-0217-MTZ |
| REICH CONSULTING GROUP, INC., | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## POST-TRIAL FINAL ORDER AND JUDGMENT

WHEREAS, Supernus Pharmaceuticals, Inc., ("Supernus," "Plaintiff," or "Counterclaim Defendant"), Supernus Merger Sub, Inc., Biscayne Neurotherapeutics, Inc. ("Biscayne" or the "Company"), and Reich Consulting Group, Inc. ("Reich," "Defendant," or "Counterclaimant") entered into a merger agreement on September 12, 2018 (the "Merger Agreement");[1]

WHEREAS, on March 23, 2020, Supernus filed a verified complaint seeking indemnification for breaches of the Merger Agreement, and on May 1, Reich filed a verified answer and counterclaim seeking declaratory judgment and indemnification;

---

[1] Capitalized terms not defined herein have the same meaning as used in the Answer and Counterclaim at Docket Item ("D.I.") 6 and the Merger Agreement.

WHEREAS, on June 23, Reich filed a Motion for Partial Judgment on the Pleadings, which the Court heard on January 12, 2021, and granted in part;[2]

WHEREAS, before trial, Supernus withdrew its indemnification claims regarding Biscayne's 2017 U.S. tax return (the "2017 Tax Claim");

WHEREAS, I held a half-day trial on the papers on the remaining claims on September 10, 2021; considered the parties' pre- and post-trial submissions; and grant the evidence the weight and credibility I find it deserves;[3]

NOW THEREFORE, this 29th day of October, 2021, the Court finds and orders as follows:

1.       Supernus is a pharmaceutical company incorporated in Delaware.[4] Pursuant to the terms of the Merger Agreement, Supernus acquired Biscayne, a biotech startup, for an initial payment of $15 million.[5]  The Merger Agreement was extensively negotiated between the parties and contained relatively standard provisions regarding integration, indemnification, representations and warranties, and the creation of an escrow fund to deal with post-closing disputes.[6]  Reich serves

---

[2] D.I. 8; D.I. 24; D.I. 26.

[3] Citations to trial exhibits are in the form "JX —."  The Joint Pre-Trial Stipulation and Order, available at D.I. 69, is cited as "PTO ¶ —."  And citations to the trial transcript, available at D.I. 76, are in the form "Tr. —."

[4] PTO ¶ II.A.1; JX 6 at 1 [hereinafter "Merger Agr."].

[5] PTO ¶¶ I.A, I.B.1, II.A.3; Merger Agr. at 3.

[6] PTO ¶¶ II.B.5–9.

2

as Biscayne's Securityholder Representative, and Citibank, N.A. serves as the escrow agent for the parties under an Escrow Agreement dated October 4, 2018.[7]

**Supernus Is Not Entitled To Indemnification Or Fees.**

2.     Supernus's Count I asserted several claims for indemnification based on breaches of representations and warranties in the Merger Agreement. Post-trial, Supernus claims only that it is entitled to indemnification for Biscayne's alleged breach of Section 6.01 (the "Ordinary Course Covenant") in the Merger Agreement.[8] But the Ordinary Course Covenant did not survive Closing, and Supernus did not bring a timely claim for breach of the Ordinary Course Covenant before it expired.

3.     Section 6.01 bound Biscayne to operate in the ordinary course of business "from the date of this Agreement until . . . the Effective Time."[9] The "Effective Time" is "the time when the Certificate of Merger ha[s] been duly filed with the Delaware Department of State or at such later time as may be agreed by

---

[7] PTO ¶¶ II.A.4, II.B.6, II.C.10.

[8] PTO ¶ I.A ("Counts I and II of Supernus'[s] Complaint seek indemnification for breaches of representations, warranties and covenants set forth in Sections 4.06, 4.07, and 6.01(a) of the Merger Agreement."). At trial, Supernus effectively withdrew its only other live claim for breach, which asserted Biscayne breached its representations and warranties under Sections 4.06 and 4.07 regarding Financial Statements and Liabilities. Tr. 11 ("THE COURT: So everyone agrees that these accounts—the accounts payable statement in JX 5 accurately reflected these amounts that were due and owing, and we don't have a breach of 4.06. Is that correct? MS. FENTON: Correct. I'm really looking at 6.01(a).").

[9] Merger Agr. § 6.01(a).

[Supernus] and [Biscayne] in writing and specified in the Certificate of Merger."[10] Thus, the Ordinary Course Covenant bound Biscayne between September 12, 2018, when the parties executed the Merger Agreement,[11] and October 4, when the Certificate of Merger was filed.[12] Under Section 8.01(a), "[t]he covenants and agreements contained herein that are to be performed at or prior to the Closing shall not survive the Closing."[13] The Closing occurred no later than October 4.[14]

4. Supernus had to give notice of its claim for indemnification of the Ordinary Course Covenant before the covenant expired. Section 8.01(b) provides:

---

[10] Merger Agr. § 2.03.

[11] PTO ¶ II.B.6.

[12] D.I. 80, Certificate of Merger. While the Certificate of Merger was submitted after trial, this Court may take judicial notice of it. *See, e.g.*, *In re Cadira Gp. Hldgs., LLC Litig.*, 2021 WL 2912479, at *8 n.74 (Del. Ch. July 12, 2021) (collecting cases).

[13] Merger Agr. § 8.01(a).

[14] D.I. 6, Verified Answer and Counterclaim of Reich Consulting Group, Inc. ¶ 11 [hereinafter "Counterclaim"]; D.I. 7, Supernus Pharmaceuticals, Inc.'s Answer to Counterclaim of Reich Consulting Group, Inc., at 5 ¶ 2. *Compare* Merger Agr. § 2.02 ("The date on which the Closing occurs is referred to in this Agreement as the 'Closing Date.'" (emphasis omitted)), *with id.* § 2.03 (defining "Effective Time" as "the time when the Certificate of Merger ha[s] been duly filed with the Delaware Department of State or at such later time as may be agreed by [Supernus] and [Biscayne] in writing and specified in the Certificate of Merger."). Reich argues "the intent of the agreement is for the Closing and the Effective Time to be simultaneous." D.I. 79 at 3. I need not reconcile these dates.

4

> No claim for indemnification for breach of any . . . covenant contained in this Agreement . . . may be asserted pursuant to this Agreement unless prior to the expiration of the applicable survival period specified in Section 8.01(a), such claim is asserted by proper written notice in accordance with this Article VIII . . . .[15]

Supernus submitted indemnification claim notices to Reich on January 21, 2019,[16] October 25, 2019,[17] and March 26, 2020[18]—each after Closing on October 4, 2018.

5.     The parties did not address before or during trial whether Supernus's indemnification claim notices were timely in view of the Ordinary Course Covenant's survival period.[19] Nevertheless, in considering Supernus's contractual indemnification claim, the Court must read the Merger Agreement as a whole.[20] "To determine what contractual parties intended, Delaware courts start with the text."[21]

---

[15] Merger Agr. § 8.01(b) (emphasis omitted).

[16] PTO ¶ II.D.12; JX 8.

[17] PTO ¶ II.D.13; JX 11.

[18] PTO ¶ II.D.14; JX 17.

[19] *See* D.I. 72 at 2 ("Given that the parties are now focused on the alleged breach of Section 6.01, I invite the parties to submit simultaneous letter briefing on whether the post-closing ordinary course claim is viable."). The parties filed post-trial submissions on September 20, 2021. D.I. 77; D.I. 79.

[20] PTO ¶¶ I.A, II.D.12–14; Merger Agr. §§ 6.01, 8.01, 8.02; *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) ("In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." (citations omitted)); *Hampton v. Turner*, 2015 WL 1947067, at *3 (Del. Ch. Apr. 29, 2015) ("In reaching its conclusions, the Court takes a holistic view in attempt to give effect to all of the contract terms and to reconcile or harmonize all of the contract's provisions." (internal quotation marks omitted) (quoting *2009 Caiola Fam. Tr. v. PWA, LLC*, 2014 WL 1813174, at *7 (Del. Ch. Apr. 30, 2014))).

[21] *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) (citing *Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003)).

"When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions, without resort to extrinsic evidence."[22] Accordingly, I requested and received supplemental briefing on the timeliness of Supernus's claim notice based on the Ordinary Course Covenant.[23]

6. The Merger Agreement is clear and unambiguous. Biscayne covenanted under Section 6.01 to operate in the ordinary course only before the Effective Time.[24] Under Section 8.01(a), the Ordinary Course Covenant did not survive Closing.[25] Under Section 8.01(b), Supernus had to bring an indemnification claim for breach of the Ordinary Course Covenant before it expired. Supernus did not do that.[26] Supernus is not entitled to judgment on its Count I. Judgment is entered for Reich and against Supernus, on Count I.

7. Reciprocally, Reich prevails, in part, on its Counterclaim Count I for a declaratory judgment: Reich does not have to indemnify Supernus for the claims Supernus brought in this action.[27] But in the absence of any viable indemnification claim against Reich, I decline to consider Reich's request for a broad declaration that

---

[22] *Id.* at 846 (internal quotation marks omitted) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010)).

[23] D.I. 72; D.I. 77; D.I. 79; D.I. 80.

[24] Merger Agr. § 6.01.

[25] *Id.* § 8.01(a).

[26] *Id.* § 8.01(b).

[27] PTO ¶¶ IV.A.4, IV.B.1; Counterclaim ¶ 92.

it "has fulfilled its obligations under the Merger Agreement and the Escrow Agreement."[28]  It is not appropriate to absolve Reich of breaches that have not been raised.[29]  While declaratory judgments may be used "to advance the stage at which a matter is traditionally justiciable, the [Declaratory Judgment Act] is not to be used as a means of eliciting advisory opinions."[30]  Judgment is entered in part for Reich and against Supernus in part, on Counterclaim Count I.

8.      Supernus's Count II seeks attorneys' fees under Section 8.02(a)'s provision for "Losses" from an indemnifiable claim.[31]  Supernus's indemnification claims fail, so it cannot claim Losses under Section 8.02(a).  Supernus is not entitled to judgment on Count II.  Judgment is entered for Reich and against Supernus, on Count II.

**Reich Is Not Entitled To Specific Performance or Damages.**

9.      In Counterclaim Count II, Reich seeks an order of specific performance requiring Supernus to submit better reports describing its Diligent Efforts for 2018 and 2019, pursuant to Section 3.04(a) (the "Diligent Efforts Reports").[32]  Reich also

---

[28] Counterclaim ¶ 91.

[29] *Crescent/Mach I P'rs, L.P. v. Dr Pepper Bottling Co. of Tex.*, 962 A.2d 205, 209 (Del. 2008) ("Delaware courts do not address 'disagreements that have no significant current impact.'" (quoting *Stroud v. Milliken Enter., Inc.*, 552 A.2d 476, 480 (Del. 1989))).

[30] *Anonymous v. State*, 2000 WL 739252, at *4 (Del. Ch. June 1, 2000) (internal quotations omitted) (citing *Stroud*, 552 A.2d at 479).

[31] Merger Agr. § 8.02(a).

[32] PTO ¶¶ IV.B.5, V.B.2; Counterclaim ¶¶ 98, 101.

seeks damages for costs it incurred obtaining information that should have been disclosed in timely Diligent Efforts Reports.

10.     Section 3.04(a) provides, in pertinent part:

> [U]pon the request of the Securityholder Representative, which request my not be made more than once per calendar year, [Supernus] shall deliver to the Securityholder Representative a report for the preceding calendar year describing the Diligent Efforts undertaken by [Supernus] and its Affiliates (including a summary of the clinical development, marketing, promotion and selling activities of [Supernus] and its Affiliates with respect to the Products for such calendar year).[33]

Though Supernus eventually submitted Diligent Efforts Reports for both 2018 and 2019,[34] Reich asserts they were tardy and insufficiently "fulsome."[35]

11.     Reich must prove by clear and convincing evidence that it is entitled to specific performance and has no adequate legal remedy.[36] "A claim for specific performance is a specialized request for a mandatory injunction, requiring a party to perform its contractual duties. Its purpose is to place the aggrieved party in the position that it would have been in but for the breach."[37] "A party seeking specific performance must establish that (1) a valid contract exists, (2) he is ready, willing,

---

[33] Merger Agr. § 3.04(a).

[34] JX 15; JX 20.

[35] Tr. 45.

[36] *Osborn*, 991 A.2d at 1158 (citations omitted).

[37] *Currax Pharms. LLC v. OptiNose AS*, 2021 WL 223810, at *4 (Del. Ch. Jan. 22, 2021) (quoting *QC Hldgs., Inc. v. Allconnect, Inc.*, 2018 WL 4091721, at *11 (Del. Ch. Aug. 28, 2018) (footnotes and internal quotation marks omitted)).

and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance."[38]

12.    Supernus already submitted Diligent Efforts Reports to Reich.[39] Reich's specific performance claim is therefore moot.[40]

13.    To the extent Reich seeks an order compelling Supernus to submit better or more detailed Diligent Efforts Reports, Reich has not met its burden to show specific performance is appropriate as a matter of fact, contract, or law.[41]

14.    Section 3.04(a) does not specify any standard for Diligent Efforts Reports; it offers no metric for "fulsomeness."[42]  And even if the Merger Agreement set such a standard, the record does not demonstrate that Supernus's Diligent Efforts

---

[38] *Osborn*, 991 A.2d at 1158 (citing *Morabito v. Harris*, 2002 WL 550117, at *1 (Del. Ch. Mar. 26, 2002)).

[39] JX 15; JX 20.

[40] *See Klig v. Deloitte LLP*, 36 A.3d 785, 798 (Del. Ch. 2011) ("The final claim in Klig's complaint sought an order of specific performance directing the defendants to 'allow him to be an active partner in the Deloitte entities until he either resigns, with drawls [sic] or is involuntarily terminated' This claim for relief was rendered moot when Klig was involuntarily terminated effective August 26, 2010." (citations and alterations omitted)); *In re IBP, Inc.*, 793 A.2d 396, 407 n.30 (Del. Ch. 2002) ("Assume that a final judgment was not entered, and that the June 27 order of specific performance remained unappealable at the time Tyson completed its obligations to IBP under the June 27 order and the IBP-Tyson settlement.  In that scenario, Tyson's acts would have rendered the case moot."), *aff'd sub nom. Tyson Foods, Inc. v. Aetos Corp.*, 818 A.2d 145 (Del. 2003).

[41] *See Project Boat Hldgs., LLC v. Bass Pro Gp., LLC*, 2019 WL 2295684, at *13 (Del. Ch. May 29, 2019) ("Each party bears the burden of proving its claims or counterclaims by a preponderance of the evidence." (citing *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *13 (Del. Ch. Sept. 30, 2013))).

[42] *See* Merger Agr. § 3.04(a).

9

Reports fell short. Both 2018 and 2019 Diligent Efforts Reports addressed "a summary of the clinical development, marketing, promotion and selling activities of [Supernus] and its Affiliates with respect to the Products," which is all that Section 3.04(a) requires.[43] Reich did not lodge contemporaneous objections as to the reports' adequacy, or request more information as permitted under Section 8.04(f).[44]

15. Further, Reich's requested specific performance of more "fulsome" Diligent Efforts Reports is not feasible. "[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable."[45] "[E]quity will not grant specific performance of a contract if it cannot effectively supervise and carry out the enforcement of the order."[46] Specific performance will not be ordered where the

---

[43] JX 15; JX 20; Merger Agr. § 3.04(a).

[44] Tr. 18, 66, 69; Merger Agr. § 8.04(f) ("At the reasonable request of the Securityholder Representative, [Supernus] shall . . . grant the Securityholder Representative and its authorized Representatives all reasonable access to the books, records, employees and properties of [Supernus] to the extent reasonably related to the matters to which the Claim relates, in each case other than to the extent necessary to preserve attorney-client privilege. All such access shall be granted under the conditions that shall not unreasonably interfere with the business and operations of [Supernus].") Reich's request for the 2019 report did specify what it hoped to receive. JX 16.

[45] *AbbVie Endocrine Inc. v. Takeda Pharm. Co. Ltd.*, 2021 WL 4059793, at *7 n.98 (Del. Ch. Sept. 7, 2021) (internal quotation marks omitted) (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)).

[46] *W. Willow-Bay Ct. LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *13 (Del. Ch. Nov. 2, 2007) (citations and internal quotation marks omitted), *aff'd*, 985 A.2d 391 (Del. 2009); *Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1246 n.34 (Del. 2018) (Strine, J., concurring in part) ("[A] contract must contain all material terms in order to be enforceable, and specific performance will only be granted when an agreement is clear and definite and a court does not need to supply essential contract terms.'" (quoting *Ramone v. Lang*, 2006 WL 905347, at *10 (Del. Ch. Apr. 3, 2006) and *Osborn*, 991 A.2d at 1159));

10

order "would necessarily involve either an order of such vague generality as to give little or no specific direction to the person or entity subject to the order."[47] "[E]nforcement of the requested relief must be sufficiently precise to be practicable."[48]

16. And so, it is unclear as a matter of contract and as a matter of common law that specific performance is appropriate. Reich has failed to demonstrate that Supernus's Diligent Efforts Reports were in breach of any contractual standard. And the Court cannot force Supernus to meet an amorphous standard that is not found in the Merger Agreement. Counterclaim Count II fails and Reich's request for specific performance is denied. Judgment is entered for Supernus and against Reich, on Counterclaim Count II.

17. Reich also complains that Supernus's Diligent Efforts Reports were delayed. Although not pled in its Counterclaim, Reich's briefing seeks money damages totaling $890.50, the cost of obtaining information on the progress of

---

*Minn. Invco of RSA No. 7, Inc. v. Midwest Wireless Hldgs. LLC*, 903 A.2d 786, 793 (Del. Ch. 2006) ("'Specific performance is a matter of grace that rests in the sound discretion of the court.' Under Delaware law, a party seeking the equitable remedy of specific performance must prove the existence and terms of an enforceable contract by clear and convincing evidence." (quoting *Peden v. Gray*, 2005 WL 2622746, at *3 (Del. Oct. 14, 2005) and citing *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14 (Del. Ch. 2001))).

[47] *Carteret Bancorp, Inc. v. Home Gp., Inc.*, 1988 WL 3010, at *1 (Del. Ch. Jan. 13, 1988).

[48] *Millien v. Popescu*, 2014 WL 463739, at *12 (Del. Ch. Jan. 31, 2014) (citing *Prestancia Mgmt. Gp., Inc. v. Va. Heritage Found., II LLC*, 2005 WL 1364616, at *4 (Del. Ch. May 27, 2005)).

Biscayne's new patent application after it requested—but before it received—the 2019 Diligent Efforts Report.[49] But Section 3.04(a) does not specify a timeline or deadline by which Supernus must provide the Diligent Efforts Reports, once requested.[50] There is no timeliness provision for Supernus to breach. In the absence of a timeliness provision, Reich's damages claim fails for lack of a breach.

### Reich Is Not Entitled To A Declaration That Supernus Acted In Bad Faith; Indemnification; or Fees.

18.     Reich's Counterclaim Count III seeks indemnification, but does not allege Supernus breached any particular section of the Merger Agreement. Rather, Reich broadly alleged that "Supernus has failed to perform its covenants, agreements and obligation[s] contained in this Agreement."[51] In the pretrial order and its briefs, Reich alleged Supernus breached Sections 3.04(a), 6.08(a), 5.08(a), 8.03(c), and 11.07(a), and the Escrow Agreement.[52] Reich seeks attorneys' fees from Supernus's breaches as Losses under Section 8.05(a).

---

[49] Tr. 44; JX 18; JX 19; JX 23.

[50] *See* Merger Agr. § 3.04(a).

[51] Counterclaim ¶ 105.

[52] PTO ¶¶ IV.B.3–6; *id.* IV.B.6 ("Whether Reich is entitled to attorneys' fees and costs under Section 8.05(a)(i)-(ii) for Plaintiff's initiation and prosecution of this action and failure to comply with Sections 3.04, [] 6.08(a), 5.08(a), 8.03(c), or 11.07(a) of the Merger Agreement and the Escrow Agreement as incorporated into the Merger Agreement."); Reich OB 35–36; D.I. 67, Defendant/Counterclaim Plaintiff Reich Consulting Group, Inc.'s Answering Pre-Trial Brief at 17–20.

19.     As discussed above, Reich has failed to show that Supernus breached Section 3.04 as it relates to the Diligent Efforts Reports.  As for the other provisions Reich identified, Reich has framed Supernus's litigation missteps or failure to satisfy gating requirements as breaches for which Supernus is liable to Reich.  They are not.

20.     Section 6.08(a) is a notice provision that gates any tax liability claim a party might bring.  It provides, in pertinent part:

> If any party receives written notice of an asserted Tax liability with respect to a matter for which it has a right to reimbursement hereunder (and the other parties do not have knowledge of the asserted Tax liability) and fails to provide the other parties with prompt notice thereof after actual receipt of such written notice and as a result such other parties are precluded from contesting the asserted Tax liability in the appliable forum as a result of such failure to notify, then such other parties shall be relieved of its obligations with respect to such asserted Tax liability.[53]

In Reich's Motion for Partial Judgment on the Pleadings, Reich invoked Section 6.08(a) as a defense to Supernus's 2017 Tax Claim because Supernus failed to give Reich timely notice about the pending tax proceedings.[54]  At the pleading stage, the Court found Section 6.08(a)'s notice requirement to be a condition precedent, which

---

[53] Merger Agr. § 6.08(a).

[54] D.I. 8 at 3–4; D.I. 16 at 1–6; D.I. 24 at 5–11, 34.

Supernus generally averred it had satisfied in accordance with Court of Chancery Rule 9(c).[55] Supernus later withdrew the 2017 Tax Claim.[56]

21.     At trial, after Supernus withdrew the 2017 Tax Claim, Reich contended Supernus's failure to provide notice for that claim is an independent breach. But Rule 9(c) also requires a party plead "[a] denial of performance or occurrence" of a condition precedent "specifically and with particularity."[57] Reich did not plead it is entitled to indemnification for Supernus's breach of Section 6.08(a) in its Counterclaim.[58]

22.     And even if Reich had pled that Supernus "breached" Section 6.08(a)'s notice requirement, "nonperformance of a condition precedent is not a breach of contract since the purpose of the condition is merely to qualify the duty to perform

---

[55] D.I. 24 at 44 ("And under *Central Mortgage Co. v. Morgan Stanley*, at 27 A.3d 531 (Del. 2011), and Court of Chancery Rule 9(c), it would be an error on my part to set aside Supernus'[s] general averment that it performed all conditions precedent at the pleading stage."); Ct. Ch. R. 9(c) ("Conditions Precedent. – In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."). For this reason, Supernus's 2017 Tax Claim survived Reich's Motion for Partial Judgment on the Pleadings, but Supernus later withdrew the claim.

[56] *See* Tr. 6 ("I'm also not going to address the tax filing issue, the $23,000 tax filing issue. We withdrew that because of concerns that the Court raised during the hearing on the motion for judgment on the pleadings.").

[57] Ct. Ch. R. 9(c).

[58] *See generally* Counterclaim.

14

immediately."[59]    Supernus's failure to comply with Section 6.08(a)'s notice requirement is not an indemnifiable claim.

23.    Next, Reich contends Supernus owes it attorneys' fees because it breached the Merger Agreement's anti-reliance, integration, and exclusive remedy provisions. In its pleading-stage motion, Reich successfully argued these provisions barred Supernus's fraudulent concealment claim.[60]  At trial, Reich suggests that because Supernus's fraud claim was dismissed, its efforts to bring that claim breached these same anti-reliance, integration, and "sole and exclusive remedy" provisions.[61]

---

[59] 23 *Williston on Contracts* § 63:6 (4th ed.) (citations omitted).

[60] D.I. 8 at 5–7; D.I. 16 at 10–18; D.I. 24 at 13–19, 36–37; *id.* at 13 ("Turning to the fraudulent inducement, now, that claim is only in Count III of the complaint. That claim is barred for two separate reasons. On the one hand, there's the combination of the anti-reliance and integration provisions. On the other hand, there's the sole and exclusive remedy provision in combination with the definition of 'Fraud' in the agreement.").

[61] Reich OB at 36; Merger Agr. §§ 5.08(a), 8.03(c), 11.07(a); *id.* § 8.03(c) ("[E]xcept for claims for equitable relied pursuant to Section 11.06 or for Fraud, the indemnification provisions of this Article VIII shall be the sole and exclusive remedy of [Supernus], whether in contract, tort, or otherwise, for all matters arising out of relating to the Merger, this Agreement and the Transactions.").

24. Anti-reliance and integration provisions are contractual defenses.[62] Exclusive remedy provisions are affirmative defenses.[63] In fact, Reich raised the Merger Agreement's exclusive remedy provision as the Third Affirmative Defense in its Answer and Counterclaim.[64] Like failures to satisfy conditions precedent, actions or omissions that trigger contractual defenses to breach claims are not themselves indemnifiable breaches.[65] Reich is not entitled to attorneys' fees and

---

[62] *See, e.g.*, *Clark v. Davenport*, 2019 WL 3230928, at *10 (Del. Ch. July 18, 2019) (characterizing an anti-reliance provision as "an anti-reliance defense"); *cf. Am. Cap. Acq. P'rs, LLC v. LPL Hldgs., Inc.*, 2014 WL 354496, at *8 (Del. Ch. Feb. 3, 2014) ("Often, parties choose to preempt fraud claims arising out of extra-contractual representations by including in their contracts both integration clauses and anti-reliance clauses."); *Kronenberg v. Katz*, 872 A.2d 568, 587 (Del. Ch. 2004) ("The defendants' major defense rests on the integration provision in the LLC Agreement . . . ."); *In re Cliff House Condo. Council v. Capaldi*, 1997 WL 225786, at *1 (Del. Ch. Apr. 30, 1997) ("In the circumstances, the purchasers reasonably relied on the promise and the defendants are estopped from asserting the integration clause in the purchasers' agreements of sale as a defense."), *aff'd, sub nom. Cliff House Condo. Council on Behalf of Ass'n of Owners of Cliff House Condo. v. Capaldi*, 703 A.2d 643 (Del. 1997).

[63] *See, e.g.*, *Moore Bus. Forms, Inc. v. Cordant Hldgs Corp.*, 1998 WL 71836, at *6 (Del. Ch. Feb. 4, 1998), *as revised* (Mar. 5, 1998) (characterizing the purchase agreement's exclusive remedy provision as an affirmative defense).

[64] Counterclaim at 33 ("Count III of the Complaint is barred by Section 8.03(c) of the Merger Agreement.").

[65] *See, e.g.*, *Galardi Gp. Franchise & Leasing, LLC v. Barstow Town Square, LLC*, 2016 WL 4733231, at *9 (Cal. Ct. App. Sept. 12, 2016) ("How, for example, could Leasing have breached the integration clause? How could *anybody ever* breach an integration clause?!? Accordingly, while we reject Barstow's claim of breach on the merits, we also reject it, separately and alternatively, because Barstow has failed to support it with reasoned argument and citation to authority." (citing *Ramos v. Westlake Servs. LLC*, 195 Cal. Rptr. 3d 34, 41 (Cal. App. 4th 2015))); *Kirzhner v. Silverstein*, 2011 WL 4382560, at *9 (D. Colo. Sept. 20, 2011) (dismissing amended counterclaims which alleged: "At the time that Kirzhner entered into the Stock Purchase Agreement, she had the then-present intention to take the action of [breaching the 'sole remedy' provision and] suing [BMGI]

16

costs for Supernus's initiation and prosecution of this action just because some of Supernus's claims fell to Reich's contract-based defenses.[66] Counterclaim Count III fails. Judgment is entered for Supernus and against Reich, on Counterclaim Count III.

25. Finally, Reich seeks attorneys' fees from Supernus on the basis that Supernus asserted escrow claims in bad faith. It grounds that request in the bad faith exception to the American Rule, and in the Escrow Agreement.[67] Specifically, Reich

---

and Silverstein in the event that either of them ever committed any breach or default of the [Agreement].").

Reich's theory of breach may be more properly understood as asserting a breach of a covenant not to sue, if such a covenant were present in the Merger Agreement. Reich OB 36 ("[T]he Court granted Reich['s] judgment on the pleadings as to Supernus's claim of fraud in the inducement. The Court did so because the claim was barred by both the anti-reliance/integration provisions and the definition of 'Fraud' in the Merger Agreement. Supernus's claim was contrary to the plain terms of the Merger Agreement. As such, Supernus breached the Merger Agreement by attempting to seek a remedy outside the 'sole and exclusive' remedies provided for in the Merger Agreement." (internal citations omitted)); *Princeton Digital Image Corp. v. Off. Depot Inc.*, 2017 WL 10765194, at \*5 (D. Del. Aug. 1, 2017) ("For example, a breach of a covenant not to sue may result in an underlying suit (i.e., the suit that breaches the contract), as well as a breach of contract suit."). But the Merger Agreement's anti-reliance, integration, and exclusive remedy provisions do not amount to a promise by Supernus not to sue; they are boundaries on and interpretive tools within the Merger Agreement itself.

[66] To recognize Supernus's claims that were barred by these defenses as breaches of those provisions, which could generate indemnifiable losses, would be to effectively shift attorneys' fees in favor of any party that successfully wielded one of these defenses. Doing so risks upending Delaware's careful and conservative common law and contractual paradigms for fee-shifting.

[67] Reich OB 36, 38–41; Counterclaim ¶ 89; PTO ¶¶ I.B.3, IV.B.2, IV.B.6; Tr. 52 ("We filed saying that these claims, and particularly in this suit, are in bad faith.").

asserts Supernus breached the Escrow Agreement's requirement that Supernus "reasonably believe[] in good faith [Supernus] is entitled to indemnification."[68]

26.     To demonstrate that a litigant acted in bad faith, a claimant must show "an extreme set of facts" and subjective evidence of bad faith.[69] "As a matter of law, a finding of bad faith requires 'conduct so fraudulent, frivolous, vexatious, wanton or oppressive as to amount to egregiousness.'"[70]

27.     Without more, evidence that the purchaser was disappointed and brought a host of grievances adding up to the escrow amount does not demonstrate bad faith. Further, that Supernus's claims were eventually dismissed does not mean that they were brought in bad faith.[71] Reich has failed to meet its "stringent burden of producing clear evidence of [Supernus's] bad faith conduct. [Supernus] did not

[68] JX 7, Escrow Agreement § 4(b)(i); *see also* Merger Agr. at Ex. B, Escrow Agreement § 4(b)(i); Merger Agr. § 11.07(a) (stating exhibits are part of the Merger Agreement).

[69] *In re Chelsea Therapeutics Int'l Ltd. S'holders Litig.*, 2016 WL 3044721, at *7 (Del. Ch. May 20, 2016) (concluding a plaintiff must show "an 'extreme set of facts'" to state a bad-faith claim) (quoting *Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *7 (Del. Ch. June 30, 2014))); *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015) ("The bad faith exception applies only in extraordinary cases, and the party seeking to invoke that exception must demonstrate by clear evidence that the party from whom fees are sought . . . acted in subjective bad faith." (internal quotation marks omitted) (quoting *Lawson v. State*, 91 A.3d 544, 552 (Del. 2014)).

[70] *Bonham v. HBW Hldgs., Inc.*, 2005 WL 3589419, at *11 (Del. Ch. Dec. 23, 2005) (quoting *Reagan v. Randell*, 2002 WL 1402233, at *3 (Del. Ch. June 21, 2002)).

[71] *Julius v. Accurus Aerospace Corp.*, 2019 WL 5681610, at *17 (Del. Ch. Oct. 31, 2019) ("While I have concluded that Sellers did not breach the APA, that fact is insufficient, without more, to warrant a finding that Buyers brought their claims in bad faith."), *aff'd*, 241 A.3d 220 (Del. 2020).

knowingly assert[] frivolous claims or engage in obstinate, deceptive or inherently unreasonable conduct."[72] Reich is not entitled to a declaration that Supernus breached the Merger Agreement by submitting false escrow claim notices in bad faith, to indemnification for breach of the Escrow Agreement as incorporated into the Merger Agreement, or to fee shifting under the bad faith exception to the American Rule.

28. Each party will bear its own costs.

*/s/ Morgan T. Zurn*
Vice Chancellor Morgan T. Zurn

---

[72] *Id.* (internal quotation marks omitted) (quoting *Johnston v. Arbitrium (Cayman Is.) Handels AG*, 720 A.2d 542, 546 (Del. 1998) and *Marra v. Brandywine Sch. Dist.*, 2012 WL 4847083, at *4 (Del. Ch. Sept. 28, 2012)).